IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:08-CV-3760-GRA |
| | ) | |
| JOHN HOWARD ALEXANDER, a/k/a | ) | |
| HOWARD IRA SMALL, INDIVIDUALLY | ) | |
| and AS TRUSTEE OF THE ALEXANDER | ) | |
| FAMILY TRUST | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff, the United States, for its complaint, alleges as follows:

1. This is a civil action wherein the United States seeks to reduce to judgment the federal income tax and civil tax penalty assessments made against the defendant, John Alexander ("the taxpayer"), also known as Howard Ira Small; for a judicial determination that the "Alexander Family Trust" is the alter ego or nominee of the taxpayer, and; to foreclose the tax liens of the United States upon certain real property located in Greenville County, South Carolina.

### *Jurisdiction and Parties*

2. Under 26 U.S.C. §§ 7401 and 7403, this action to reduce to judgment tax assessments made against John Alexander and to foreclose federal tax liens encumbering real property in Greenville County, South Carolina has been requested and authorized by the Chief Counsel of the Internal Revenue Service and is brought at the direction of a delegate of the Attorney General of the United States.

1

3716058.1

2

3.  The Court has jurisdiction over this case under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.

4.  Venue is proper in the District of South Carolina under 28 U.S.C. §§ 1391(b) and 1396.

5.  John Alexander, also known as Howard Ira Small, resides in Greenville, South Carolina, within this judicial district.  John Alexander is also named as a defendant in his capacity as Trustee of the Alexander Family Trust.

6.  The Alexander Family Trust, through its trustee, is named as a defendant in this action pursuant to 26 U.S.C. § 7403(b) as it may claim an interest in the real property that is the subject of this civil action.  In accordance with Fed. R. Civ. P. 4(e)(1) and S.C. R. Civ. P. 4(d), service of process may be made upon the Alexander Family Trust by serving John Alexander as Trustee of the Alexander Family Trust.

### *Count I: To Reduce to Judgment Income Tax Assessments Against John Howard Alexander*

7.  The United States incorporates by reference the allegations contained in Paragraphs 1 through 6, above, as if fully set forth here.

8.  John Howard Alexander failed to file federal income tax returns for the tax periods ending December 31, 1990; December 31, 1991; December 31, 1992; December 31, 1993; December 31, 1994, and; December 31, 1995.

9.  On the dates indicated below, a delegate of the Secretary of the Treasury timely made assessments against the taxpayer for unpaid federal income taxes and statutory additions to tax as follows:

| Year | Amount of Tax Assessed | Penalties and Interest Assessed | Date of Assessment | Total Amount Owed (as of August 31, 2008) |
|------|------------------------|----------------------------------|--------------------|-------------------------------------------|
| 1990 | $4,518.00 | $6,518.42 | 11/23/1998 | $22,673.59 |
| 1991 | $4,656.00 | $5,588.75 | 11/16/1998 | $21,207.36 |
| 1992 | $4,925.00 | $5,139.53 | 11/16/1998 | $20,924.68 |
| 1993 | $4,906.00 | $4,448.06 | 11/16/1998 | $19,541.30 |
| 1994 | $5,020.00 | $3,849.80 | 11/16/1998 | $18,634.79 |
| 1995 | $5,001.00 | $3,094.33 | 11/16/1998 | $16,949.63 |
|      |           |           | TOTAL:     | $119,931.35 |

10.  A delegate of the Secretary of the Treasury gave timely notice of each assessment described in paragraph 9 to the taxpayer and made demand for payment.

11.  The taxpayer neglected, failed and refused to pay the assessed income tax liabilities described in paragraph 9 and therefore remains indebted to the United States for the unpaid balance plus statutory additions and interest accruing from the dates of assessment.

### *Count II: To Reduce to Judgment Civil Penalty Assessments Against John Howard Alexander*

12.  The United States incorporates by reference the allegations contained in Paragraphs 1 through 6, above, as if fully set forth here.

### *Background of the Defendant's Tax-Fraud Scheme*

13. Beginning in at least 1996, Alexander promoted several tax-fraud schemes though the Aware Group, Freedom Trust Group and International Business Systems.

14.  In 1997, Alexander married Heather Ferguson, who became co-director of the Aware Group and helped Alexander form International Business Systems ("IBS"). IBS was incorporated in the Caribbean Island of Nevis and was used to receive payments for membership fees and products that Alexander and Ferguson sold.

3

3716058.1

15.  The schemes that Aware Group, Alexander, and Ferguson marketed included the "U.S.-source," "reliance," and "redemption" tax-fraud schemes. The Aware Group, Ferguson, and Alexander also instructed customers on methods to use sham trusts to conceal assets in order to evade IRS collection efforts. The Aware Group marketed these tax-fraud schemes as part of memberships they sold.

16.  On or about April 29, 2004, Alexander and Ferguson divorced. As part of the Final Decree of Divorce, Alexander agreed to retire as the director of the Aware Group. Ferguson retained ownership over the Aware Group, but was required to make payments to Alexander related to the sale of CD/audiotapes of seminars conducted by Alexander. The decree further provided that Alexander retained ownership of Aware Group's trust-related products, which were then sold by him through the Freedom Trust Group.

17.  On December 1, 2004, Alexander modified his agreement with Ferguson. As part of the modified agreement, Ferguson managed the websites through which Alexander sold tax-fraud schemes through the Freedom Trust Group, and Alexander relinquished any right to payments from the Aware Group.

19.  Through the Freedom Trust Group website, Alexander promoted and sold the same materials he sold as the director of the Aware Group, changing only the names of the products.

*The "U.S.-Source" Tax-Fraud Scheme Promoted by John Howard Alexander through the Aware Group and Freedom Trust Group*

20.  As part of the "U.S.-source" tax-fraud scheme, the taxpayer falsely advised customers that income from sources within the United States is not subject to federal income tax payment or reporting requirements.  The taxpayer falsely advised customers that U.S. citizens are "nonresident aliens" or "sovereign State citizens" and are not

4

3716058.1

required to pay taxes or file returns reporting taxes on income earned while working in the United States. As part of the U.S.-source tax-fraud scheme, the taxpayer sold to customers a document titled "Confidential Report on Taxable Income," part of a CD-series provided by Aware Group.  The "Confidential Report on Taxable Income" falsely stated, *inter alia*, that:

> a. "The strict limits of federal power imposed by the Constitution prohibited Congress from imposing a tax on the income[] of United States citizens who live and work exclusively in the 50 states."
>
> b. "taxable 'sources' [of income] apply only to those engaged in international or foreign commerce, but do not apply to United States citizens living and working exclusively within the United States."
>
> c. "the 'specific sources' of income subject to the income tax" are "list[ed] in 26 C.F.R. § 1.861-8(f)(1)."

21.  As part of the scheme, the taxpayer prepared and sold a document titled "Affidavit: Certificate of Citizenship" for customers to file in their state of residence. The taxpayer falsely advertised that, by filing the document, customers were "sovereign State citizens" who are not subject to income tax filing requirements.  The document falsely stated that the named individual is a "non-resident alien outside both general and tangential venue and jurisdiction of Title 26, USC" because the federal United States is allegedly limited to "District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, and American Samoa."

22.  As part of the scheme, the taxpayer sold customers a document demanding the statutory authority for taxing "sovereign State citizens," which the taxpayer told customers to send to the IRS.  The taxpayer falsely advised customers that the IRS's failure to respond would result in an implied agreement between the customer and the

IRS that the false statements regarding the tax laws are correct, and would release the individual from any obligation to file income tax returns or pay taxes.

*The "Reliance" Tax-Fraud Scheme Promoted by John Howard Alexander through the Aware Group and Freedom Trust Group*

23. The taxpayer also promoted a "Reliance Defense" tax-fraud scheme as part of a CD series sold to customers. The Reliance Defense package contained several false statements regarding the federal income tax, including, *inter alia*, that:

> a. U.S. citizens can "relinquish" their Social Security numbers and are no longer obligated to file tax returns, pay income taxes, or perform other duties imposed by the Internal Revenue Code.
>
> b. American nationals, or "sovereign State citizens," are not required to pay or report income taxes.
>
> c. American nationals, or "sovereign State citizens," have no "contractual nexus" with the United States and are not required to file tax returns or pay income taxes on wages.
>
> d. The U.S. Supreme Court ruled that the 16th Amendment created no new power of taxation and did not amend or change the constitutional limits that forbid any direct taxation on individuals. Thus, the taxpayer falsely advised that the current laws relating to income tax, Social Security, and related taxes, have never applied to anyone other than appointed and elected government officials or employees.
>
> e. Individuals can immunize their property from tax liens by applying for "land patents."

24. As part of the scheme, the taxpayer falsely advised customers that they can justify their failure to file income tax returns by purchasing "Reliance Defense Letters," which contain fraudulent tax arguments. As part of the Reliance Defense tax-fraud scheme, the taxpayer sold customers a list of purported professionals who would provide written opinion letters for fees. The "Reliance Defense Contact" letters, advocating the false statements, and sold by the taxpayer included:

3716058.1

a. A letter from William Conklin, purporting to be a tax expert and paralegal, which falsely advises that income tax reporting requirements are "voluntary," and not required.

b. An opinion letter from Guy Curtis, a Nebraska attorney, which erroneously states that the income tax does not apply to wages.

c. An opinion letter from Thomas Price, purporting to be a former magistrate judge, stating that the federal income tax is voluntary.

d. An opinion letter from Eduardo Rivera, a California attorney who was enjoined from preparing similar letters, *United States v. Rivera*, 2003 U.S. Dist. LEXIS 15823 (C.D. Cal. July 23, 2003), falsely stating that the income tax does not apply to wages.

e. An opinion letter from John "Judge" Rizzo, a former municipal court judge who pled guilty to felony charges of willfully aiding and assisting in the preparation of false income tax returns (*United States v. Rizzo*, Case No. 2:03-cr-00345-ROS (D. Ariz.)). The letter falsely states that individuals are not liable for income tax payment and reporting requirements.

25. As part of the scheme, the taxpayer sold customers a document, containing frivolous arguments similar those in the letter sold as part of the "U.S.-source" scheme, which the taxpayer told customers to send to the IRS. The taxpayer falsely advised customers that if the IRS did not respond, it had impliedly agreed that the frivolous arguments are correct and that the individual is no longer obligated to file income tax returns. The taxpayer advised customers that these documents provided a "reliance defense" to potential criminal tax charges asserted against the customers.

*The "Redemption" Tax-Fraud Scheme Promoted by John Howard Alexander through the Aware Group and Freedom Trust Group*

26. The taxpayer also promoted a "Redemption" tax-fraud scheme as part of a CD-series sold to customers. The Redemption package falsely stated, *inter alia*, that: The United States Government is a corporation that created a fictional "strawman" of all U.S. citizens. The defendant falsely advised customers that tax debts are not owed by the

individual, but by the "fictional strawman" with the same name created by the Government.

27. As part of the scheme, the taxpayer falsely advised customers that by filing income tax returns in past years, they impliedly entered a contract assuming the debts of the "strawman."

28. As part of the scheme, the taxpayer falsely advised that customers can "redeem" their identity and revoke an "implied" contractual requirement to pay the "strawman's" income taxes, by filing with federal or state agencies U.C.C. documents, that are prepared by the taxpayer. As part of the scheme, the taxpayer advised customers that, after "redeeming" their identity, they are no longer required to file returns or pay taxes.

29. As part of the scheme, the taxpayer falsely stated that the purported implied contract extends to Social Security tax requirements. In order to help customers evade federal employment taxes, the taxpayer prepared and sold to customers documents purporting to "relinquish" Social Security numbers, after which the customer is purportedly no longer obligated to pay employment taxes or have income taxes withheld by employers.

30. As part of the scheme, the taxpayer falsely advertised that the purported implied contract extended to federal courts. The taxpayer prepared and sold to customers documents purporting to permit them to legally refuse with impunity to obey any summons or other directive from federal courts.

3716058.1

*The Asset Concealment Schemes Promoted by John Howard Alexander through the Aware Group and Freedom Trust Group*

31. As part of the U.S.-source, Reliance, and Redemption tax-fraud schemes and to help customers evade the federal income tax payment requirements, the taxpayer advised customers to:

> a. Conceal assets by stop using bank accounts. As part of the scheme, the taxpayer advised customers to deal only in cash or postal money order so that the IRS can neither compute nor collect the proper amount of tax due.
>
> b. Conceal income from the IRS by not filing tax returns so that the IRS cannot identify the customer's amount or source of income.
>
> c. Conceal income and property by developing a series of multi-layered offshore trusts "to create a diversion of paperwork and closed doors for an outsider trying to pry into your affairs." As part of this scheme, the taxpayer instructed customers controlling the trusts to record liens in the name of the trust against their personal property in excess of the amount of any tax liability, in order to fraudulently thwart IRS collection efforts.

*Defendant's "Pure Trust" Tax-Fraud Scheme*

32. The taxpayer also marketed a program or arrangement known as a "pure trust" as a tax dodge to enable participants to evade reporting and paying federal income taxes, as well to conceal assets.

33. The taxpayer falsely stated that the "pure trust" products he sells can be engaged in any occupation, business or profession, and that all earnings therefrom are tax-exempt, and that no tax return need be filed.

34. The taxpayer advertised the following purported benefits of the "pure trust" tax-fraud scheme:

> a. customers can legally generate income without any reporting requirements;
>
> b. customers can protect assets from unnecessary government interference and taxation; and

9

    c. customers' pure trusts can be used to hold all their property (including homes, automobiles and RV's) and protect it from liens, levies, seizures and confiscation from events arising as a result of their personal actions.

35. The taxpayer's statements about the tax benefits associated with the "pure trusts" were false or fraudulent.

36. The "pure trusts" that the taxpayer marketed are operated for the benefit of the owner, are devoid of economic substance and are shams for federal tax purposes. The program constitutes an improper assignment of income and a fraudulent transfer of assets.

*Defendant's Knowledge of the Falsity of the Tax Benefits of His Tax-Fraud Schemes*

37. The taxpayer held himself out as a tax expert by participating in tax-law-related seminars, and therefore he knew or should have known that tax-fraud schemes promoted by the Aware Group and Freedom Trust Group were unlawful.

38. The taxpayer knew that by 2002 a customer had sued the Aware Group for the cost of the ineffective fraudulent tax arguments.

39. The taxpayer knew or should have known that John Rizzo, who wrote "Reliance Defense" letters for the taxpayer's customers, was indicted on April 2, 2003, and pled guilty on February 4, 2004, to felony charges of willfully aiding and assisting in the preparation of false income tax returns.

40. The taxpayer knew or should have known that a federal district court on July 18, 2003, enjoined Eduardo Rivera, who wrote "Reliance Defense" letters for the taxpayer's customers falsely stating that the income tax does not apply to wages, from preparing similar letters.

3716058.1

41. The taxpayer knew or should have known that on October 3, 2001, the Tax Court sanctioned a customer in the amount of $25,000 for advancing frivolous arguments sold by the taxpayer.

42. The taxpayer knew or should have known that the employment tax evasion, trust misuse, and offshore transactions schemes he promoted are identified in the IRS's annual consumer alert of tax scams that taxpayers are urged to avoid.

43. The taxpayer knew or should have known that federal courts have barred other individuals from promoting similar tax-fraud schemes. *See United States v. Ewell*, Case No. 1:04-cv-305 (Jan. 25, 2005, S.D. Ohio) (barring promotion of "pure trust" tax-fraud scheme); *United States v. Bell*, Case No. 1:cv-01-2159 (Jan. 30, 2004, M.D. Pa.) (barring promotion of "U.S.-source" scheme).

44. On November 17, 2006, the United States District Court for the District of South Carolina in Case No. 6:06-cv-01862-HFF entered an order finding that the tax-fraud schemes promoted by John Howard Alexander violated various provisions of the Internal Revenue Code and further enjoining John Howard Alexander from continuing to promote tax-fraud schemes or making false or fraudulent representations concerning material tax matters.

*The IRS assesses John Howard Alexander for penalty for promoting tax-fraud schemes under 26 U.S.C. § 6700.*

45. On the dates indicated below, a delegate of the Secretary of the Treasury made assessments against the taxpayer for civil penalties pursuant to 26 U.S.C. § 6700 as follows:

3716058.1

| Year | Civil Penalty Assessed | Date of Assessment | Amount Owed (as of August 31, 2008) |
|---|---|---|---|
| 2000 | $ 123,000 | 06/25/2007 | $ 133,775.92 |
| 2001 | $ 320,000 | 07/30/2007 | $ 345,348.76 |
| 2002 | $ 421,000 | 07/30/2007 | $ 454,348.77 |
| 2003 | $ 245,000 | 07/30/2007 | $ 264,407.24 |
| 2004 | $  43,000 | 07/30/2007 | $  46,406.17 |
| TOTAL | $1,152,000 | | $1,244,286.86 |

46.  A delegate of the Secretary of the Treasury gave timely notice of each assessment described in paragraph 45 to the taxpayer and made demand for payment.

47.  The taxpayer neglected, failed and refused to pay the assessed civil penalty liabilities described in paragraph 45 and therefore remains indebted to the United States for the unpaid balance plus statutory additions and interest accruing from the dates of assessment.

<u>Count III: To Foreclose Federal Tax Liens Encumbering Real Property Belonging to John Howard Alexander</u>

48.  The United States repeats the allegations contained in paragraphs 1 through 47 of this Complaint as if fully and separately restated herein.

49. The United States seeks to foreclose federal tax liens on real property located at 6350 White Horse Road, Greenville, South Carolina, with the following legal description:

> ALL that certain piece, parcel, or lot of land, situate, lying and being in the State of South Carolina, County of Greenville, being known and designated as Lot No. 1 and a part of Lot No. 2 on a plat of Farmington Acres recorded in the Office of the Register of Deeds for Greenville County, South Carolina, in Plat Book GGG at Page 183 and on a more recent survey prepared by Freeland & Associates dated October 25, 1979 and recorded in Plat Book 7-K at Page 92, reference to said plat is hereby craved for a complete metes and bounds description.

12

3716058.1

> THIS BEING the same property conveyed unto Miriam Getz by deed of Jackie Lee Hammack dated November 3, 1995 and recorded November 4, 1994 in the Register of Deeds Office for Greenville County South Carolina in Book 1588 at Page 816.

50. Federal tax liens arose on the dates of assessment described in paragraphs 9 and 45 under 26 U.S.C. §§ 6321 and 6322 and attached to all property and rights to property of John Alexander including the real property described in paragraph 49.

51. The IRS filed a notice of federal tax lien relating to the taxpayer's income tax liabilities for 1990, 1991, 1992, 1993, 1994, and 1995 as described in paragraph 9 and encumbering the subject real property referenced in paragraph 49 in Greenville County, South Carolina on February 17, 2005. The IRS filed an amended notice of federal tax lien concerning the taxpayer's income tax liabilities on June 4, 2008.

52. The IRS filed a notice of federal tax lien relating to the taxpayer's 26 U.S.C. § 6700 civil penalty liability for 2000 as described in paragraph 45 and encumbering the subject real property referenced in paragraph 49 in Greenville County, South Carolina on October 1, 2007.

53. The IRS filed a notice of federal tax lien relating to the taxpayer's 26 U.S.C. § 6700 civil penalty liabilities for 2001, 2002, 2003, and 2004 as described in paragraph 45 and encumbering the subject real property referenced in paragraph 49 in Greenville County, South Carolina on October 22, 2007.

54. The IRS filed a notice of federal tax lien against John-Howard Alexander, as Trustee of The Alexander Family Trust, nominee of John Howard Alexander relating to both the taxpayer's income tax liabilities for 1990, 1991, 1992, 1993, 1994, and 1995 as described in paragraph 9 and the taxpayer's 26 U.S.C. § 6700 civil penalty liabilities for

13

2000, 2001, 2002, 2003, and 2004 as described in paragraph 45 and encumbering the subject real property referenced in paragraph 49 in Greenville County, South Carolina on May 20, 2008.

55. On or about October 16, 2003, by quitclaim deed, Miriam Getz conveyed the subject real property referenced in paragraph 49 to John-Howard Alexander as Trustee for The Alexander Family Trust. In the deed, Miriam Getz agreed to pay a mortgage in favor John-Howard Alexander as recorded October 16, 2003 in the Recorder of Deeds' office for Greenville County, South Carolina.

56. Also, on or about October 16, 2003, a mortgage was recorded in Greenville County, South Carolina, concerning the subject real property referenced in paragraph 49. The mortgage showed Miriam Getz as the mortgagor and John-Howard Alexander as the mortgagee.

57. On or about July 27, 2006, a mortgage satisfaction concerning the subject real property referenced in paragraph 49 and the mortgage referenced in paragraph 56 was filed by John-Howard Alexander in Greenville County, South Carolina.

58. On or about September 7, 2006, Miriam Getz died.

59. The taxpayer has remained in continuous use and possession of the subject real property referenced in paragraph 49 and has enjoyed all burdens and benefits of ownership.

60. The Alexander Family Trust holds bare legal title to the real property described in paragraph 49 of this complaint as the alter ego, or as a nominee for, the taxpayer. Alternatively, the Alexander Family Trust is a sham trust which may be disregarded.

WHEREFORE, the United States, respectfully requests the following relief:

a. Judgment against John Howard Alexander for unpaid federal income taxes in the amount of $119,931.35, plus statutory additions accruing after August 31, 2008, until paid;

b. Judgment against John Howard Alexander for unpaid civil tax liabilities incurred under 26 U.S.C. § 6700 in the amount of $1,244,286.86, plus statutory additions accruing after August 31, 2008, until paid;

c. A determination and declaration of judgment that the federal tax liens identified above attach to all property and rights to property of John Howard Alexander;

d. That the Court adjudge, determine and decree that the defendant John Howard Alexander, as trustee of the Alexander Family Trust, holds the subject real property identified in paragraph 19 in trust for the defendant, John Howard Alexander, or as his alter ego or nominee, and determine that the federal tax liens described herein attach to such property;

e. A decree that the federal tax liens be foreclosed, that the subject real property be sold in a judicial sale, according to law, free and clear of any right, title, lien, claim or interest of any of the above-named defendants, and that the proceeds of the sale be distributed to such parties in such amounts as this Court determines;

f. Judgment for court costs, and;

g. Such other relief as is just and equitable.

DATED this 12th day of November 2008.

        Respectfully submitted,

        W. WALTER WILKINS III
        United States Attorney

        s/ George J. Conits
        GEORGE J. CONITS
        Assistant United States Attorney
        District Bar No. 234
        District of South Carolina
        P.O. Box 10067
        Greenville, SC  29603
        Telephone: (864) 282-2116
        Email: george.conits@usdoj.gov

        JAMES C. STRONG
        U.S. Department of Justice, Tax Division
        P.O. Box 7238, Ben Franklin Station
        Washington, D.C.  20044
        Telephone: (202) 514-9953
        Facsimile: (202) 514-6770
        Email: james.c.strong@usdoj.gov

        Attorneys for Plaintiff, United States