IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:08-cv-03760-GRA |
| | ) | |
| JOHN HOWARD ALEXANDER, a/k/a | ) | |
| HOWARD IRA SMALL, INDIVIDUALLY | ) | |
| and AS TRUSTEE OF THE ALEXANDER | ) | |
| FAMILY TRUST | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JAMES C. STRONG

1. I am a trial attorney with the Tax Division at the Department of Justice, representing the United States in this action. I was admitted *pro hac vice* to this Court on November 21, 2008. (Doc. # 6).

2. Attached to this Declaration is a true and correct copy of the deposition transcript of John Howard Alexander, taken on July 27, 2009.

3. Attached to this Declaration is a true and correct copy of the deposition transcript of Heather Ferguson, taken on July 27, 2009.

4. Attached to this Declaration as Exhibit 2 is a true and correct copy of a document entitled Mortgage of Real Estate, filed on October 16, 2003 in Greenville County, South Carolina.

5. Attached to this Declaration as Exhibit 3 is a true and correct copy of a document entitled Mortgage of Real Estate, filed on July 27, 2006 in Greenville County, South Carolina.

6. Attached to this Declaration as Exhibit 4 is a true and correct copy of a document entitled Title to Real Estate, filed on October 16, 2003 in Greenville County, South Carolina.

7. Attached to this Declaration as Exhibit 5 is a true and correct copy of a document entitled "Your Privacy and Asset Accumulation Guide – by FTG Version 10/00." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 15.

8. Attached to this Declaration as Exhibit 6 is a true and correct copy of a separate document entitled "Your Privacy and Asset Accumulation Guide – by FTG Version 10/00." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 16.

9. Attached to this Declaration as Exhibit 7 is a true and correct copy of a document entitled "Family Trust." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 17.

10. Attached to this Declaration as Exhibit 8 is a true and correct copy of a document entitled "Management Trust." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 18.

11. Attached to this Declaration as Exhibit 9 is a true and correct copy of a document entitled "Banking Trusts." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 20.

12. Attached to this Declaration as Exhibit 10 is a true and correct copy of a document entitled "Holding Trusts." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 19.

13. Attached to this Declaration as Exhibit 11 is a true and correct copy of a document that is a Table of Contents for "Aware Management Administrative Trusts." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 22.

14. Attached to this Declaration as Exhibit 12 is a true and correct copy of a newsletter entitled "Aware American" and dated September 1996. The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 23.

15. Attached to this Declaration as Exhibit 13 is a true and correct copy of a document entitled "The Aware Group's Referral Program." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 8.

16. Attached to this Declaration as Exhibit 14 is a true and correct copy of a document entitled "Getting Started." The document was attached to the deposition of John Howard Alexander as Plaintiff's Deposition Exhibit 13.

17. Attached to this Declaration as Exhibits A-F are true and correct copies of IRS Forms 4340, Certificate of Assessments reflecting the assessments made against John Howard Alexander for unpaid income taxes for Tax Years 1990-1995.

18. Attached to this Declaration as Exhibits G-K are true and correct copies of IRS Forms 4340, Certificate of Assessments reflecting the assessments made against John Howard Alexander for civil penalties under 26 U.S.C. § 6700 for Tax Years 2000-2004.

19. Attached to this Declaration as Exhibit L is a true and correct copy of a Notice of Deficiency issued to John Howard Alexander on May 20, 1998.

20.  Attached to this Declaration as Exhibit M is a true and correct copy of a Notice of Federal Tax Lien filed in Greenville County, South Carolina on February 17, 2005.

21.  Attached to this Declaration as Exhibit N is a true and correct copy of an Amended Notice of Federal Tax Lien filed in Greenville County, South Carolina on June 4, 2008.

22.  Attached to this Declaration as Exhibit O is a true and correct copy of a Notice of Federal Tax Lien filed in Greenville County, South Carolina on October 1, 2007.

23.  Attached to this Declaration as Exhibit P is a true and correct copy of a Notice of Federal Tax Lien filed in Greenville County, South Carolina on October 22, 2007.

24.  Attached to this Declaration as Exhibit Q is a true and correct copy of a Notice of Federal Tax Lien filed in Greenville County, South Carolina on May 20, 2008.

25.  Attached to this Declaration is a true and correct copy of the Court's unpublished opinion in *Noske v. United States*, 1993 WL 78311 (D. Minn. Jan. 14, 1993).

26.  Attached to this Declaration is a true and correct copy of the Court's unpublished opinion in *United States v. Kahn*, 2004 WL 1089116 (M.D. Fla. Mar. 30, 2004).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 25, 2009.

JAMES C. STRONG

GOVERNMENT
EXHIBIT

7-2

## H. SPECIAL MEETINGS

1. The Board of Trustees shall provide for meetings at stated intervals without notice.

2. Special meetings may be called by one or more Trustees upon three(3) days notice, which may be waived by any or all Trustees.

3. A majority of all the Trustees shall constitute a quorum for conducting business at any meeting.

4. All meetings may be held anywhere in the world.

5. Participation and voting at any meeting may be by way of telephone or other electronic process, as well as physical presence, so long as any such voting is followed with a writing to the non present Trustees, stating the particulars of such vote and a copy of any minutes recorded.

6. Any actions of the Board of Trustees shall require a unanimous vote.

## I. LIMITED LIABILITY

1. The Trustees shall, in their capacity as the Board of Trustees, and not as individuals, assume or incur only such liability as shall attach to the Trust assets.

2. This liability shall not in any manner jeopardize their individual or personal holdings, and for any losses they should suffer for any reason through rendering services as the Board of Trustees, they shall be reimbursed from the Trust property to the same extent as would non-interested persons, except for any loss sustained by reason of breach of fiduciary duty.

## J. TRANSFER OF TRUST CERTIFICATE UNITS

1. In accordance with the purposes of this Trust Organization, the transfer of Trust Certificate Units is strictly limited.

2. The lawful Holder of any units, as recorded in the records of the Trust, may transfer, sell, exchange or give those units to any other person(s), provided however, that such transfer is not effective unless and until it has been approved by unanimous consent of all Trustees, excluding any Grantor-Trustees, by written Minute of the Board of Trustees.

3. The transfer is effective after the old Units are surrendered to the Board, the transfer is noted in the records of the Trust, and a new Certificate is issued to the new Holder.

**page 16 - TRUST BYLAWS**

4. Approval of a legitimate transfer shall not be unreasonably withheld.

5. However, in accordance with the stated purposes of the Trust Organization, approval of any transfer may be withheld if, in the opinion of the Board, the transfer is an attempt to use the Holder's Units as security for a loan of any nature, or is otherwise an attempt of the Holder to untimely anticipate a distributive share prior to termination.

6. Transfers are not encouraged in any respect, except between family and relatives of Holders.

7. In any determination concerning the approval or disapproval of any contemplated transfer, the Board of Trustees, in its discretion, may require a sworn statement from the Holder concerning the contemplated transfer.

8. Any determination of the Board concerning such approval shall be final.

9. Any rights possessed by any Holder, by reason of his holding Trust Certificate Units, terminate upon the Holder's death.

10. Any Holder may file a request with the Board of Trustees naming any person(s) to whom he desires his Units to be transferred upon his death with full rights being transferred to new Holder.

11. Such requests shall be considered and approved in the same manner as other requests for transfers, and prompt notice shall be given to the Holder, of approval or disapproval and such approval will not be unreasonably withheld.

12. If, upon the death of any Holder, there is contained in the Minutes of the Trust, an approved transfer-upon-death form, upon receipt of the proper notice of such death by the Board of Trustees, and the old Units, the Board shall note the transfer in the records of the Trust and issue new Certificate Units according to such approved transfer.

13. If no such approved transfer appears in the Minutes, then the Board of Trustees shall transfer such Units on a pro-rata basis among the remaining Holders.

14. SETTLER may periodically add to existing or replace deceased Beneficiaries per his wishes, and therefore redistribute the appropriate share of Trust Certificate Units as he deems prudent and wise, and in the best interest of the present Holders. SETTLER may not, however, remove any existing Beneficiary once they are appointed. The FIRST TRUSTEE may assert those addition or replacement directions in SETTLER's absence and only when FIRST TRUSTEE deems said change is necessary to properly operate in the best interest of the existing Beneficiaries.

**page 17 - TRUST BYLAWS**

15. A Replacement Beneficiary shall retain all rights previously held by a Predecessor Beneficiary.

## K. ASSET DISTRIBUTIONS

1. If it is determined by the Board of Trustees that there is income distributable to the Holders of Trust Certificate Units, and/or income taxable to the Trust Organization if not distributed, the Board, without discretion, must distribute a sufficient amount of such income so as to prevent such income from being taxable to the Trust Organization.

2. If, after such distribution, any income remains, it shall be deemed to be principal and allocated to Corpus.

3. The proportionate share of distributed income to which each Holder is entitled is not discretionary, but is determined solely by the number of Trust Certificate Units held.

4. The Trust Estate may be subdivided into separate superior or subordinate trusts, shares or entities if such breakdown will, at the sole discretion of the Board of Trustees, simplify administration, avoid difficulty between Beneficiaries, or better permit the carrying out of the intent and purpose of the Trust Indenture and Bylaws.

5. The Board may do so without being required to make a physical segregation or division of assets in any respect or manner.

6. The Board of Trustees shall make a determination as to the existence or nonexistence of distributable income at convenient intervals no greater than annually.

7. Any beneficiary may apply to the Board of Trustees for an advance towards future distributions of both income and principal.

8. The Board may consider such applications based upon emergency circumstances relating to health, education or maintenance.

9. The Board, in its discretion, may, at any time, distribute to such Beneficiary, any sum which the Board feels is consistent with the purposes and intent of the Trust Indenture and Bylaws, and the rights of the other Beneficiaries.

10. Any such distribution shall be charged to the account of such Beneficiary and deducted from any future distribution of income. Should future income distributions be insufficient to cover any such advances, the balance of such advance shall be deducted from any share of Trust assets to be distributed to such Beneficiary upon termination.

**page 18 - TRUST BYLAWS**

11. Any decision of the Board to distribute or not to distribute, or as to the sum of any such advance, shall be final.

12. No future benefit devolving on any beneficiary under the Trust Organization terms or settlement shall form or constitute a portion of any communal or joint estate of such Beneficiary, but shall be and remain the sole, separate and exclusive property of such Beneficiary.

13. Should such Beneficiary be married or marry in community of property, then any benefit so accruing shall be expressly excluded from the community.

14. Such benefit shall also be free from the interference, control or marital power of any spouse of such Beneficiary.

15. For the purposes of this paragraph, the term "benefit" shall include movable and immovable property and the provisions of this paragraph shall apply moreover not only to the benefit actually delving on such Beneficiary, but also to any and all benefits at any time thereafter directly or indirectly acquired by means of the proceeds thereof.

## L. STRUCTURE TERMINATION

1. Upon the expiration of the term of this Trust, the Trust Organization shall automatically expire.

2. The Board shall have the continuing authority to act to wind up the affairs of the Trust Organization, as is necessary, past the date of expiration. In the event that the Trust Indenture was recorded, a Notice of Termination shall also be recorded and published as necessary.

3. The Board of Trustees shall pay all remaining obligations of the Trust Organization and distribute the remaining assets to the Beneficiaries in direct proportion to the number of Trust Certificate Units held.

4. Upon receiving receipts for the distribution of the remaining assets to the Beneficiaries, the Trustees shall be automatically discharged hereunder, provided that their administration and distributions have been made in accordance with the terms and provisions of the Trust Indenture and Bylaws.

5. Otherwise, a court of competent jurisdiction may be called upon to review and correct any tort or error.

**page 19 - TRUST BYLAWS**

## M.  TERM RENEWAL

1. The Board of Trustees shall have the power to renew the Trust Organization for any reasonable term, not to exceed the original term, if it is deemed by the Board to be in the best interest of the Beneficiaries and none of them object.

2. If any Beneficiary objects, the Board may, in its discretion's, distribute to that Beneficiary such portion of the Trust assets as he would have been entitled to had the Trust terminated, and continue the Trust Organization as to the remaining Trust assets and Beneficiaries.

3. In that case, the Board shall call in all Trust Certificate Units and redistribute them to reflect the remaining Beneficiaries' interests.  A resolution of any such renewal shall be entered into the Minutes of the Trust.

4. If the Trust Indenture has been recorded, notice of renewal shall also be recorded, and published as necessary.

5. Any vote concerning renewal shall take place not more than one hundred twenty (120) days and not less than sixty (60) days before the date the Trust is due to expire.

6. If the Trust is renewed, it may, in like manner, be renewed again before the end of any renewal term.

## N.  MANDATORY NON-DISCLOSURE

1. It is imperative that no officer of this TRUST organization disclose to any member of the general public, private business or counsel, any information pertaining to the Trust Certificate Unit Holders / Beneficiaries.

2. It is against the intention and wishes of the SETTLER for anyone to disclose the identities of any and all Trust Certificate Unit Holders / Beneficiaries of this TRUST organization.

3. Therefore, no non-officer shall be permitted to view any documents of this Trust Organization except for the "Declaration of Trust" and the "Trust Indenture" sections of the original formation agreement, and then, only with the direct supervision and discretion of the FIRST TRUSTEE.

**page 20 - TRUST BYLAWS**

## O. AMENDMENTS

1. The Board of Trustees shall have the power to amend the Trust Indentures and/or Bylaws to better carry out the purposes and intent thereof, or in order to conform to or comply with any law, rule, regulation or order of any government body, provided, however, that any such amendment may not be inconsistent with the basic Trust Organization purposes and intent, and not in derogation of the fiduciary obligations to the Trust Certificate Unit Holders.

2. Any Grantor-Trustee shall abstain from voting on any amendments and the remaining Trustees must vote unanimously for any such amendments to pass and take effect.

## P. ACCEPTANCE

1. IN WITNESS WHEREOF, the SETTLER hereof and the FIRST TRUSTEE hereof, in the name of the Board of Trustees, have hereunto set their hands and seals in token of the acceptance of, assent to and covenant to abide by all conditions herein imposed and expressed, this 1st day of June, 1995.


_____**Signature**

SETTLER: John Doe


_____**Signature**

FIRST TRUSTEE: Moe Loe


_____**Signature**

WITNESS: Sue Smith


**page 21 – TRUST BYLAWS**

SCHEDULE A

CITY OF <u>ANYTOWN</u>                    }
REPUBLIC OF <u>YOUR STATE</u>        }

Entered into this dáte by and between the SETTLER hereto and the FIRST TRUSTEE, of

## <u>ABC FAMILY</u> TRUST

in harmony with the Trust Indenture and the Trust Organization Bylaws, hereby conveys to the Board of Trustees, the following described property, and accepted by the FIRST TRUSTEE by and on behalf of the Board.

This conveyance is **in exchange** for one-hundred (100) units of beneficial interest, hereinafter referred to as Trust Certificate Units (TCUs), that shall be of an equivalent, and yet, indeterminate value to both parties.

This list of property is comprehensive and is the written description of those certain properties which were agreed upon and known to both the SETTLER and the FIRST TRUSTEE at the time of the execution of the Trust Indenture, and includes all properties transferred and accepted, to wit:

**CASH:**  One Hundred Dollars ($100.00)

IN WITNESS WHEREOF, we have hereunto set our hands and seals, this 1st day of <u>June, 1995</u> .

_____**Signature**
SETTLER: <u>John Doe</u>

_____**Signature**
FIRST TRUSTEE: <u>Moe Loe</u>

_____**Signature**
WITNESS: <u>Sue Smith</u>

**page 22 - SCHEDULE A**

1st Day of June, 1995

To: BOARD OF TRUSTEES
    ABC FAMILY TRUST
    1234 East Street
    Suite #444
    ANYTOWN, YOUR STATE, USA

RE: SETTLER's Preference For Issuance of Trust Certificate Units To Beneficiary

Dear Sirs:

I am writing this letter as my statement of record which is in accordance with the Trust Indenture and the Bylaws of:

## ABC FAMILY TRUST

to be signed this date, directing you, the Board of Trustees, to make the initial issue of the one hundred (100) Trust Certificate Units to the following entity(ies):

**L.B. Smith**_____ **Is Issued 30 TRUST CERTIFICATE UNITS**
**D.O. Smith**_____ **Is Issued 40 TRUST CERTIFICATE UNITS**
**B.P. Smith**_____ **Is Issued 10 TRUST CERTIFICATE UNITS**
**F.R. Smith**_____ **Is Issued 20 TRUST CERTIFICATE UNITS**

I would appreciate and am thanking you for your immediate attention to this matter.

Respectfully,

*SETTLER:* _____

**page 23 - T.C.U. LETTER**

MINUTES OF MEETING #1, BOARD OF TRUSTEES

<u>ABC FAMILY</u> TRUST
C/O <u>1234 East Street</u>
Suite #444
<u>ANYTOWN</u>, <u>YOUR STATE</u>, USA

<u>1st</u> day of <u>June</u>, 199<u>5</u>

With all of the Board of Trustees in attendance, the following Minutes were duly adopted and approved by unanimous consent as Minutes of the First Meeting of the Board of Trustees.

MINUTE NO. 1:    In accordance with the Trust Indenture and the Trust Bylaws executed this date by and between the SETTLER hereof and the FIRST TRUSTEE, the following property is hereby conveyed unto the Board of Trustees:
The full list of described property is attached to the Trust Organization documents as page 18 entitled SCHEDULE A, and signed by the SETTLER and FIRST TRUSTEE. Said Schedule A is accepted and ratified as being the true and correct list of all properties conveyed to and held by the Board of Trustees as of this date.

MINUTE NO. 2:    In accordance with the Trust Indenture and the Trust Organization Bylaws executed this date by and between the SETTLER thereof and the FIRST TRUSTEE, the Board of Trustees acknowledges the written instructions of the SETTLER concerning the issuance of the Trust Certificate Units and acknowledges the issuance of 100 Trust Certificate Units in the following manner, according to the wishes of the SETTLER, to wit:

Certificate 001: <u>L.B. Smith</u>                    - <u>30</u> UNITS
Certificate 002: <u>D.O. Smith</u>                    - <u>40</u> UNITS
Certificate 003: <u>B.P. Smith</u>                    - <u>10</u> UNITS
Certificate 004: <u>F.R. Smith</u>                    - <u>20</u> UNITS

Said certificate is now registered in the Records of the Board of Trustees.

**page 24 - MEETING MINUTES**

MINUTE NO. 3:    According to the dictates of United States Supreme Court in the case Boyd v. U.S., 166 US 618 (1886) and the case of Silverthorn v. U.S., 251 385 (1920); The Board of Trustees hereby declares all Minutes, schedules, letters, and attachments hereto, of this Trust to be private and inviolable, and therefore are not to be loaned, read or disclosed to anyone at anytime, unless it is determined by unanimous consent of the Board that disclosure of a particular Minute would be in the best interest of the Trust Organization. The dictates alluded to above are as follows:

"Any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of a crime or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot be pure atmosphere of political liberty and personal freedom."

MINUTE NO. 4:    The Board of Trustees declares the fiscal year of the Trust Organization to be the calendar year. The Board shall have the power to change such fiscal year by subsequent Minute if it is determined to be in the best interest of the Trust Organization to do so.

MINUTE NO. 5:    Until changed by future Minute, the annual meeting of the Board of Trustees of **ABC FAMILY** TRUST shall be held on January 5th each year (in case that date falls on a weekend, said meeting will be held the following Monday), at 9:30 a.m. at a location to be announced by December 28th of the prior week/year.

MINUTE NO. 6:    Special meetings called in accordance with the Bylaws may be held at any time and/or any place in the best interest of the Trust Organization.

MINUTE NO. 7:    Should any Trustee vote against any measure being passed upon by the Board, and such measure passes in spite of such negative vote, said Trustee shall, when the Minute evidencing such measure is signed, sign their name thereto with the following beside it: "Dissents to Minute Number 22", with the appropriate minute number filled in.

MINUTE NO. 8:    It is in the best interest of the Trust Organization to continue operation in as smooth a manner as possible, even if any Trustee is unable to continue their duties due to death, resignation or removal from office. Should this happen, the Board of Trustees hereby nominates the following named Successor-Trustee(s) to take the place of the following named Trustee(s) in the event that the Board desires to fill the vacancy o created, rather than to reduce the number of Trustees on the Board:

**page 25 - MEETING MINUTES**

**FIRST TRUSTEE: <u>Moe Loe</u>**
**SUCCESSOR TRUSTEE: <u>Vi Loe</u>**

Any such death, resignation or removal from office of any Trustee shall be noted in the Minutes of the Trust Organization, along with the decision of the Board to either fill the vacancy so created or to reduce the number of Trustees. Should the Board vote to fill such a vacancy, the Successor-Trustee shall immediately be notified by Certified Mail of their conditional appointment to the Board as Trustee.

Acceptance of such appointment shall be by special meeting called for such purpose and with an appropriate Minute signed by the accepting Trustee. Upon the appointment of any new Trustee to the Board of Trustees, the Board shall, in like manner, nominate a Successor -Trustee for such new Trustees The Board may, in its discretion, by appropriate Minute, allow for the pre-acceptance of the position of Trustee by any Successor -Trustee. The effect of any such pre-acceptance shall be to make the appointment of such Successor-Trustee automatic upon receipt by such Successor-Trustee of written notice of the death, resignation or removal from office of the Trustee they are named to succeed. No further action of the Board of Trustees shall then be necessary to enable such Trustee to exercise the full powers of this Trust Organization. However, an appropriate Minute shall be made reflecting that such has taken place as soon thereafter as conveniently possible.

MINUTE NO. 9:     The Board of Trustees shall reimburse any Trustee for all necessary expenses incurred by such Trustee for travel on business of the Board, as well as any expenses incurred by such Trustee incidental to his service as Trustee. To receive repayment of such expense, the Trustee must submit to the Board, written evidence of such expense, such as a written log of travel, gas receipts, meal receipts, lodging receipts, and the like. The Board may, in its discretion, prepay the expenses of such travel or work for the Board by the Trustee. Such Trustee shall account to the Board for the expenditure of such prepayment and reimburse the Board for any overpayment.

MINUTE NO. 10:     It being the intent of the SETTLER hereto to preserve this Trust Estate, it shall be the policy of the Board not to employ the services of any individual, unless such can be done on an Independent Contractor and/or Contract Worker basis, to eliminate the added expense of Social Security Taxes, Unemployment Taxes, Workmen's Compensation Insurance and the like.

MINUTE NO. 11:     All Minutes, Resolutions, Records or other Documents concerning this Trust shall include the signature of the FIRST TRUSTEE.

**page 26 – MEETING MINUTES**

MINUTE NO. 12:    As per the allowances in the Trust Indenture, the Board of Trustees hereby elects to change the Official Trust Mailing Address to the following:

1234 East Street
Suite #444 ANYTOWN, YOUR STATE, USA

There being no further business to come before this meeting, upon a motion duly made, seconded and carried, the meeting was adjourned.

_____Signature
FIRST TRUSTEE: Moe Loe

# TRUST
# Completion/Supplemental Instructions

**page 27 - INSTRUCTIONS**
**The Do-It-Yourself**
**Complete Family Trust System**

This is one of the finest organizational structures you'll find anywhere to privatize your financial transactions or to conduct business in a discreet and safe manner. Your purchase gives you access to the most exclusive benefits of dealing through a Family Trust are not talking about simple living trusts or revocable trusts here. We're talking about the real thing. The structure the professionals use. The one that's capable of minimizing and sometimes eliminating taxation. The one that prevents others from learning the identity of the Beneficiary. The one that reduces exposure to lawsuits so much that malpractice premiums can be reduced by tens of thousands of dollars a year. You have chosen the best. Now, it's up to you to utilize it to it's fullest potential. Read on, to learn what the pros have known for years. Use their experience and knowledge to maximize your benefits of dealing with an Unincorporated Business Trust Organization

Now, obviously, you either have a need to limit your liability and exposure or you need to keep certain transactions more private than before. Either way, you'll love the way the rules for this structure are set-up because they are in your favor all the way. We've found these types of TRUSTS to be one of the best game plans still available today. We're sure you'll agree. We've taken all the "mystery" out of dealing with Trusts. Now you can set one up yourself. You'll sleep better at night knowing that you still have control over your situation.

In addition to the TRUST, some astute business persons and professionals choose to explore the options of adding additional layers of protection in a way that enhances their anonymity. Usually it's best to utilize the benefits of all types of Trusts (Family, Management, Holding, Banking and Off-Shore) for this purpose. It creates a very unique diversion that eliminates the risk of having an internal leak of information.

If you need to form a structure that wants to accomplish the equivalent of "selling shares or interests" in an investment, you can still use this TRUST as is, but you need to add one additional step as outlined in the section titled "**Supplemental Information**". Depending on your specific needs, there may be other options in that section you need to consider.

Following, are step-by-step instructions on how to personalize a particular TRUST for your needs. You merely fill in the blanks by putting in your own key information. It's that simple. All the rules are spelled out along with the pros and cons of the different variables.

This documentation is not meant to be a substitute for professional, legal advice. Always consult competent legal advice as deemed necessary.

**page 28 – INSTRUCTIONS**

## INSTRUCTIONS

After printing out each page, you can copy them onto preprinted specialty papers and bind them or organize them any other way you prefer. Below, are some specific items that you may or may not have a need to change or deal with. Most of the items are pretty self-explanatory and I think you'll understand the reasoning behind each one.

## No. of copies of document.

Although most officers will want a copy for their records, it is really not necessary or required to provide all officers with their own copy of the TRUST document. There is only one copy that is considered to be the official "copy" and that one is always held by the Trust Officer for the First Trustee. That copy, along with all future Minutes that are recorded, should be always kept in a safe place. If stored electronically, always save a back-up copy off-site.

## Situs Address.

The Situs address is one that establishes what laws and jurisdiction prevails over the establishment of the Declaration of Trust. You may use your own mailing location, or Some professionals prefer locations such as Belize or Cayman Islands, etc. You are always free to move the Situs of the TRUST. Because of the way the document is written, that would re-establish the governing rules for the TRUST to that new location. Depending on your particular situation and desires, that could be advantageous.

## Mailing Address.

The mailing address is assumed to be the Situs address unless specifically changed, with an appropriate Minute. The mailing address does not have to be the same as the Situs address. For best results, you could consider leaving the Situs address as your mailing location and then draft a Minute, changing the mailing address if you find it necessary.

## Name of Trust.

The name of the TRUST is unimportant as long as it is established as a Declaration of Trust. Some people like to use a name with the suffix "Holding Trust", "Management Trust",etc.... Others prefer suffixes like "Foundation or Group", etc. You can not, however, make it appear as a banking or traditional financial institution. Most people simply choose a name of a city, town, product or service as the basis of the TRUST name.

One thing to watch out for is you don't want to use the words "Corporation", "Company", "Partnership", etc. that would imply this is something other than a Declaration of Trust which is a Contractual Agreement organizing to do business. The proper terminology for the identification of this TRUST is a "Declaration of Trust". It is also known as an Unincorporated Trust Organization by Contract.

**page 29 - SUPPLEMENTAL INFORMATION**

**SETTLER, First Trustee and Beneficiary.**
There are three main parties to a TRUST. The SETTLER, First Trustee and the Beneficiary(ies). The SETTLER and the First Trustee contract amongst themselves to start the TRUST for the benefit of the third party, the Beneficiary. The SETTLER is someone that is protecting the Beneficiary's interests, and wants to donate the initial $100.00 into the account of the TRUST. This $100.00 is a total gift by the SETTLER and is now considered principal of the TRUST, until such time that it is paid out as income to the Beneficiary.

The SETTLER decides who the Beneficiaries are and how the TRUST is structured, but beyond that, the First Trustee takes over day-to-day operations of the TRUST. The First Trustee now has the right to bring on additional Trustees, called Secondary Trustees, to help oversee the operation of the TRUST or to run specific aspects of it.

The Beneficiaries of the TRUST are the ultimate recipients of any and all income derived from the TRUST activities so be sure how you place people in this position. The easiest structure to set-up is one where **you become the First Trustee.** A very close friend or co-worker is signed on as the SETTLER and your children become the beneficiaries. This is an example of how a Trust is generally setup but you by no means have to follow this guideline.

One rule to watch out for. The three parties must be separate individuals or entities. You can not be the Beneficiary of a TRUST in which you are the First Trustee. That is a highly precarious situation. One in which you don't want to become involved. Everyone knows one or two individuals they can trust well enough to place assets in their care. The reasoning is that you want to **CONTROL** everything but not to **OWN** anything. Therefore, if you control the TRUST, which owns all your possessions, you control your own assets. What is the difference in doing that and you owning your assets and controlling them? Nothing, except for now, you're judgement proof. No one can sue you and win something that is not yours, right?

One word about Grantor-Trustee. A SETTLER is presumed to be giving the initial assets to the Beneficiaries. If it is shown that the SETTLER still retains control of the assets, it will be judged that the SETTLER is in fact a Grantor-Trustee. The income from the TRUST assets will then be taxable to the SETTLER even while the assets remain in the possession of the TRUST. This is why we said it would be safe to choose a close friend to be the SETTLER. The SETTLER has initial desires and wishes to make a gift but beyond that, they relinquish all control over that gift to the First Trustee. Also, a SETTLER can not have any financial interest in any present or future endeavor that the TRUST embarks upon. Be careful who you choose for the SETTLER position.


**page 30 - SUPPLEMENTAL INFORMATION**

**Secondary Trustees.**
Any Secondary Trustees must sign the Minute pertaining to their appointment.

**Trust Certificate Unit Holders.**
The Beneficiaries are the Trust Certificate Unit Holders. Wherever you refer to and place beneficiaries in this document, always remember to list those names with the proper number of T.C.U.s that are issued. There are always no more and no less than 100 T.C.U.s issued at any time. It is the SETTLER's initial choice to divide these up in any way they want.

**Signatures.**
Anywhere there is a space for a Witness' signature, you must find a witness to sign.

**Declaration of Trust, Trust Indenture, Trust Bylaws and Meeting Minutes.**
I believe these headings are pretty self-explanatory. The Declaration of Trust is the general guideline or set of rules that is established as the basis for the TRUST. The Trust Indenture is a more detailed version of the preceding information. The Trust Bylaws are the specific rules that govern the TRUST. They spell out some detailed do's and don'ts of what is allowed. The Meeting Minutes are the documentation of the day-to-day activities of the running of the TRUST.

**First Secretary, Trust Manager.**
You may appoint a First Secretary. This title is placed here for those times when you can not or choose not to be listed as the First Trustee. You have a couple of options. One is to be signed on as the First Trustee or to take the position as General Trust Manager. You'll notice that if a Trust Manager is appointed, they take over day-to-day activities. Whereas, a First Secretary simply watches over everything and can literally veto anything they don't like.

The best position is still the First Trustee. As you'll read in the document, the First Trustee can not be terminated whereas the other positions can be. REMEMBER THIS!

**Meetings.**
The Bylaws briefly mention the various meetings that would be called from time to time. These are required for a Trust to be legal. It is here that it is established that all meetings can be held anywhere in the World. This is a great benefit to have. Any restricted version of this clause would need to be addressed in a Minute.

**page 31 - SUPPLEMENTAL INFORMATION**

**Privacy.**
The Bylaws grants the Beneficiaries immunity from disclosure. Under no circumstances will a TRUST officer be allowed to disclose the identities of the Beneficiaries. Therefore, no non-officer shall be permitted to view any documents of this Trust Organization except for the "Declaration of Trust" and the "Trust Indenture" sections of the original formation agreement.

The Meeting Minutes, Minute #3, grants you the privacy you need to conduct your business affairs the way you see fit. Any additions to the TRUST assets, beyond the initial $100.00, must be documented with appropriate Minutes. Therefore, anything this TRUST does from here on out, will be private and against the wishes of the SETTLER and the Board to be disclosed to anyone without just cause or demand.

**Successor-Trustee**
It is highly advisable to immediately find a Successor-Trustee for Minute #8. Don't delay this appointment very long if you do. It could be crucial to the on-going, uninterrupted nature of this Trust organization.

**Selling Shares, Interests or Securities Thereof.**
If you are establishing this TRUST for the purpose of setting up an organization that can accomplish the equivalent of selling shares, interests or securities thereof, you need to add one additional step. You need to set up a simple structure similar to a sole proprietorship, fictitious name or assumed name. It's even better if it's another Trust. This will be a "Private Membership Organization" that accepts your "investors" as members. The Private Membership Organization becomes the Beneficiary and then **loans** the funds to the TRUST, who will be conducting the business activity in question (i.e. the investment). This dual structure will prevent anyone from proving that the TRUST was selling any shares in an investment. This saves you the time, trouble and expense of registering with the S.E.C. which could slow your business down considerably.

**Additional Structures / Layers of Protection.**
Some astute business persons choose to add layers of protection by setting up additional Trusts. They'll use a combination of the Family and Management Programs to create an intermingled diversion of entities. Sometimes, these additional layers can provide the extra protection to totally render yourself judgement-proof. There are other tips and tricks that come into play once you set these additional structures up. If you have a real desire to pursue these avenues, they are available.

**Unrestricted Use.**
Although you may set-up more than one TRUST with this disk and package, you may not, however, charge for this information, directly or indirectly through consulting services, etc.

**page 32 - SUPPLEMENTAL INFORMATION**

**Fraudulent Conveyance.**

The one thing to remember in a scenario of Fraudulent Conveyance is that the creditors will want to set-aside or disallow any transfer of assets which could have been used as collateral for a debt owed them. If you are going to transfer assets out of your possession, into a Trust, for reasons of avoiding present creditors, you will need to show that your "transfer" was an attempt to settle a debt with a creditor. It's not your fault there's not enough assets to go around to settle up with all the creditors. If there were, you wouldn't be in this predicament, now would you?

You need to arrange to have another Trust to place a lien against your assets with a monetary value that will exceed the value of merchandise being transferred. This will clearly show that your transfer was in an attempt to clear a lien. Just be very careful who operates that other Trust and how their names are tied to the present operating Trust you are setting up. Those Trust officers should be totally different, if possible.

If you want total protection from disclosure of transfer information to any official authorities of ANY country, you'll want to set up an Offshore Trust. No matter what the reason for the transfer, places such as Belize will not allow any documents to be placed into the hands of inappropriate parties. And since this document is NOT recorded in any state, country or registrar, there is built-in protection from improper disclosure. The Off-Shore Trust's situs can be directed to off-shore if you wish. You will need to change the jurisdiction of the Trust in an appropriate Minute.

**Multi-Layered Trusts.**

In creating multiple Trusts and multi-layered Trusts, the main objective is to create a diversion of paperwork and closed doors for an outsider trying to pry into your affairs. Therefore you need to understand the simple basics of outlining these structures.

The easiest way to understand this is to think of each Trust as a real person. When drawing out your examples on paper, outlining the flow of funds, etc. use real person's names for your example Trusts to clearly understand their relationship with each other.

The easiest example to use for creating an information trail that eventually closes off is having a second Trust be the Beneficiary of the first Trust. Then you could have a third Trust be the Beneficiary of the second Trust and so on until you've created enough of a stair-step that prevents any information leaks from disclosing any identities that should remain discreet. The principal parties, whose identities you're trying to keep a secret would be placed as the Beneficiary of the last Trust in the chain.

**page 33 - SUPPLEMENTAL INFORMATION**

**Parent / Underlying Trusts.**

In the example of a Parent / Underlying Trust, the scenario is that one Trust is either the overall umbrella (or Parent, if you will) that is the parent / controlling entity over all the other Trusts. This works if one Trust wants to diversify and yet have some of the same officers running the subordinate Trusts. In this example, the Parent Trust could be the SETTLER of the subordinate Trusts. You could use the same or some of the same Trustees for the Subordinate Trusts. This allows you to name different Beneficiaries for different business purposes.

An Underlying Trust is one that is named as Beneficiary of several Trusts. All the Trusts are created for the ultimate benefit of the one Trust. This can be used if someone has limited family and wants to diversify. All the diverse business activities will eventually benefit the one Beneficiary, who himself, operates as a Trust entity as well.

**Brother / Sister Trusts.**

Brother / Sister Trusts are ones in which they share managing directors or Trustees. They may have different SETTLERs and / or different Beneficiaries but essentially, these are the diverse Business Trusts that will eventually funnel down to an Underlying entity. They are also the diverse Trusts that may have the same SETTLER as in the Parent Trust. These Trusts are usually the "working" Trusts that generate most of the revenues for either a Parent or Underlying entity. Since they may have some of the same directors / Trustees, be very careful as to how they relate to each other so that none of the Trust officers jeopardizes their fiduciary relationships with their respective Beneficiaries.

**page 34 - SUPPLEMENTAL INFORMATION**


GOVERNMENT
EXHIBIT

8

# MANAGEMENT
# TRUST


EXHIBIT  18
Deponent Alexander
Date 7-27-04 Rptr. JBE
WWW.DEPOBOOK.COM

# TRUST CERTIFICATE

## ONE HUNDRED TRUST CERTIFICATE UNITS AUTHORIZED

**This certifies that**_____is the holder of ____ Trust Certificate Units of _____, a Trust. The Trust Indenture of created a Trust Organization managed and controlled by A Board of Trustees, who hold full legal title to all of the Trust Corpus, Including the right to income derived therefrom. The Indenture authorizes One Hundred (100) uniform units, evidenced by Trust Certificates, as full and adequate consideration for all property transferred in Trust at the Creation thereof. This Certificate conveys no enforceable right to or interest in the trust assets, nor in the management or control thereof. The HOLDER hereof is entitled to a proportional share of any distributions of income made by the BOARD, and is entitled to a proportional share Of the Trust assets remaining at the termination thereof. All transfers of the Certificates must be approved by the BOARD to be effective. Upon surrender of this Certificate, the BOARD shall have full authority to issue other Certificates pursuant to the terms of the Trust Indenture and Bylaws. Other limitations and restrictions are contained in the Trust Indenture and Bylaws.

In Witness Thereof, the BOARD OF TRUSTEES, has caused this CERTIFICATE to be signed by the BOARD, and its TRUST SEAL to be hereunto affixed,

on this the **FIRST** day of_____ In The YEAR of OUR LORD, **200__**.

_____     _____
TRUSTEE     TRUSTEE

_____     _____
TRUSTEE     TRUSTEE

## INSTRUCTIONS FOR:
## MINUTES, BILL OF SALES, WARRANTY DEEDS

I.  **HOW TO KEEP MINUTES**

A.  VIEW EXAMPLE MINUTES FOR REGULAR SCHEDULED BUSINESS MEETING.

1.  Each Trust MUST HAVE AT LEAST ONE (1) BUSINESS MEETING PER YEAR NO EXCEPTIONS

> a. This is to meet legal requirements proving the Trust is being administered.
>
> b. At least one (1) business meeting per year for Holding Trusts and one (1), three (3), or four (4) per year for Management Trusts, depending on the activity.
>
> 1.) If one (1) meeting per year, the meeting must be within the last quarter of the year, preferably as close to the last week in the calendar quarter as possible.
>
> 2.) If three (3) business meetings per year, have one business meeting every four (4) months.

2. NOTICE: At top of page "MINUTES OF MEETING #5, BOARD OF TRUSTEES:", always be careful to increase the minutes number (#) for each new minute created, refer to the last minute in the Trust documents for the next meeting number (#).

3. Type the format of the minutes exactly as they are in the example, changing only the specific nature of the meeting.

4.  After the typing of the minutes send the minutes to your first Trustee to be signed. Please remember the 1st Secretary DOES NOT SIGN THE MINUTES until the minutes come back signed by the Trust Officer. The 1st Secretary>s signature states that the minutes are approved as typed and signed and can now be recorded into the official record of the Trust.

B.  Look at "EXAMPLE MINUTES FOR SPECIAL CALLED BUSINESS MEETINGS".

1.  The guidelines and instructions on Page "F" apply to this section also

2.      If there is business to take care of, example: contract with a CPA, go look at a piece of equipment or property the Trust is interested in buying, maintain property by painting, repairing, etc., buy or sell a house, buy or sell a car, buy or sell anything, you authorize the change, work, service, purchase or sale, etc., by meeting with the Board of Trustees and placing a formal minute into the official record of the Trust stating the details of the action to be taken.

3.      NOTICE; top of page "F" MINUTES OF MEETING #6, SPECIAL CALLED MEETING, BOARD OF TRUSTEES:

         A.      Always increase the minutes number (#) for each new minute created, refer to the last minute in the Trust documents for the next meeting number (#).

         b.      The Board of Trustees may meet anytime they desire, with proper notice, and put SPECIAL CALLED MEETING at the top and in the first paragraph.

4.      Type the format of the minutes exactly as they are in the example, changing only the specific nature of the meeting.

5.      After the typing of the minutes send the minutes to your first Trustee to be signed. Please remember the 1st Secretary DOES NOT SIGN THE MINUTES until the minutes come back signed by the Trust Officer the 1st Secretary's signature states that the minutes are approved as typed and signed and can now be recorded into the official record of the Trust Organization.

## II.    BILL OF SALE

A.      Look at: "EXAMPLE BILL OF SALE".

1.      Any time you or the Trust sells something you must fill out a bill of sale: a bill of sale is used on everything but real property (House, Land, building, etc.)

2.      Yes, a Bill of sale is used with a car, boat, motorcycle, etc.,

3.      Recording a Bill of Sale in the County Recorder's Office is OK, but it is not suggested because privacy is the goal; when a Bill of Sale is recorded in the Recorder's Office it is a matter of public record.

B.      How to fill out the Bill of Sale.

A. Notice: every line the General Trust Manager fills out should be UNDERLINED and numbered.

    1.)   For cars, boats, motorcycles, etc., put GIFT (to Family Holding Trust), this will save on transfer fees in some states.

    2.)   for most things just put TEN OR MORE AND NO/100S DOLLARS ($10.00).

    3.)   When the Trust sells something to someone or to some organization put the actual DOLLAR AMOUNT.

B. Record who or what bought or received the item sold and their address (yes it can be a post office box).

C. Look at Page "K" and "L"; these are blank BILL OF SALES for the General Trust Manager to make copies of and use in the administration of the Trust.


III.    **WARRANTY DEEDS**

A.    LOOK at: "EXAMPLE WARRANTY DEED".

    1.   Any time the Trust buys or sells a home, property, buildings or real property of any type, there must be a Warranty Deed.

    2.   Before any property is transferred into Trust the owner of the property must check with the mortgage company to receive permission to transfer the property.

    3.   When the Warranty Deed is completed with Notary it must be filed with the County Recorder's Office *this is not optional*, the deed must be recorded with the county the property is in.

B.    How to fill out the Warranty Deed.

1.    Line for line:

a.    Line 3-4 are identifying who is transferring and who is accepting the transfer

b.    Line 7-11 are for the date of the transfer, the entity performing the transfer, the entity receiving the transfer and the address of the one receiving the transfer.

c.    Line 19 is the County and State where property is located..

d.      Line 20-26 are the legal description of the property being transferred; if there is not enough room for the description use a separate sheet of paper and mark the paper.

e.      Line 36-37 is the last day of the year of the year of the transfer.

f.      Line 42-56 are the signature lines; each signature has two witness beside it.

g.      Line 58-69 are the notary lines.

2.      Look at Page IV-7 for blank Deeds for the General Trust Manager to make copies of and use.

# EXAMPLE MINUTES
## FOR REGULAR SCHEDULED BUSINESS MEETINGS

MINUTES OF MEETING #5, BOARD OF TRUSTEES

**ABC *MANAGEMENT TRUST***
c/o 4321 Main Street
 Your Town, Your State
Date: June 01, 2005

With all of the Board of Trustees in attendance, the following Minutes were duly adopted and approved by unanimous consent as Minutes of the Fifth Meeting of the Board of Trustees for  **ABC  *MANAGEMENT TRUST*** :

**MINUTE NUMBER 20:**
 The Board of Trustees have approved the purchase of a living room set of furniture and authorizes the General Trust Manager to proceed with the purchase:  this purchase is not to exceed $1,700.00 and will include:

one sofa, one love seat, two arm chairs, two end tables, one coffee table, two lamps, one floral arrangement for the coffee table.

**See Attachment A:**  receipt (s) to verify purchase, cost and delivery.

There being no further business to come before the meeting, upon a motion duly made, seconded and carried, the meeting was adjourned.

_____

First Trustee:

Minutes recorded and approved on the 1st of June, A.D. 2005 by:

_____

1st Secretary for the Board of Trustee
FIRST & LAST NAME

## EXAMPLE MINUTES
## FOR SPECIAL CALLED BUSINESS MEETINGS

USE ANY TIME YOU NEED TO PUT SOMETHING INTO THE FORMAL RECORD OF THE TRUST, EXAMPLE: BUYING SOMETHING, SELLING SOMETHING, CHANGING OWNERSHIP, REPAIR WORK, ETC. ALWAYS ATTACH A COPY OF WARRANTY DEED, BILL OF SALE, PURCHASE INVOICE, DELIVERY RECEIPT, ETC., AND MAKE REFERENCE TO THE ATTACHMENT IN THE BODY OF THE MINUTES. REMEMBER: THIS IS YOUR AUTHORIZATION TO DO AND PROOF YOU DID IT.

MINUTES OF MEETING #6, SPECIAL CALLED MEETING, BOARD OF TRUSTEES

**ABC** *MANAGEMENT TRUST*
NON DOMESTIC MAIL
C/O 4321 Main Street
 Your Town, Your State

Date: June 01, 2005

With all of the Board of Trustees in attendance, the following Minutes were duly adopted and approved by unanimous consent as Minutes of the Sixth Meeting, a Special Called Meeting, of the Board of Trustees for **ABC** *MANAGEMENT TRUST*.

**MINUTE NUMBER 20:** The Board of Trustees has approved the purchase of a living room set of furniture and authorizes the General Trust Manager to proceed with the purchase; this purchase is not to exceed $1,700.00 and will include:

one sofa, one love seat, two arm chairs, two end tables_, one coffee table, two lamps, one floral arrangement for the coffee table.

**See Attachment A:** receipt (s) to verify purchase, cost and delivery.

There being no further business to come before the meeting, upon a motion duly made, seconded and carried, the meeting was adjourned.


First Trustee:

Minutes recorded and approved on the 1st of June , A.D. 2005 by:

_____
1st Secretary for the Board of Trustees

# INSTRUCTIONS FOR:
## MINUTES, BILL OF SALES, WARRANTY DEEDS

**I....HOW TO KEEP MINUTES**

A. Look at: "EXAMPLE MINUTES FOR REGULAR SCHEDULED BUSINESS MEETING".

1. Each Trust MUST HAVE AT LEAST ONE (1) BUSINESS MEETING PER YEAR ---NO EXCEPTIONS

 a. This is to meet legal requirements proving the Trust is being administered

 b. At least one (1) business meeting per year for holding Trust, and one (1), three (3), or four (4) per year for Management Trusts depending on the activity.

  1.) If one (1) meeting per year the meeting must be within the last quarter of the year, preferably as close to the end of the quarter as possible.

  2.) If three (3) business meetings per year, have one business meeting every four (4) months.

  3.) If four (4) business meetings per year have one business meeting every three (3) month.

2.  NOTICE:  Top of page "MINUTES OF MEETING #5, BOARD OF TRUSTEES", always be careful to increase the minutes number (#) for each new minute created, refer to the last minute in the Trust documents for the next meeting number (#).

3.  Type the format of the minutes exactly as they are in the example, changing only the specific nature of the meeting.

4.  After the typing of the minutes send the minutes to your first Trustee to be signed. Please remember the 1st Secretary *DOES NOT SIGN THE MINUTES* until the minutes come back signed by the Trust Officer the 1st Secretary's signature states that the minutes are approved as typed and signed and can now be recorded into the official record of the Trust.

## <u>INSTRUCTIONS FOR:   MINUTES, BILL OF SALES, WARRANTY DEEDS . . . cont.</u>

### II. **BILL OF SALE**

A. Look at;  "BILL OF SALE".

    1.  Any time you or the Trust sells something you must fill out a bill of sale; a bill of sale is used on everything but real property (House, Land, building, etc.)

    2.  Yes, a Bill of Sale is used with a car, boat, motorcycle, etc.

    Recording a Bill of Sale in the County Recorder's Office is OK, but we do not suggest it because privacy is the goal.  When a Bill of Sale is recorded in the Recorder's Office, it is a matter of public record.

B. How to fill out the Bill of Sale.

    1. Notice: The General Trust Manager fills out the Bill of Sale.

    2. What do I do?

        a. For the following......

1.)..For cars, boats, motorcycles, etc., put GIFT (to Family Holding Trust), this will save on transfer fees in some states.

2.)  For most things just put TEN OR MORE AND  NO/100'S DOLLARS ($10.00).

3.)  When the Trust sells something to someone or to some organization put the actual DOLLAR AMOUNT.

b. Include who or what bought or received the item sold and their address (yes, it can be a post office box).

C. Look at the blank BILL OF  SALES for the General Trust Manager to make copies of and use in the administration of the Trust.  MAKE COPIES -MAKE COPIES

## INSTRUCTIONS FOR:  MINUTES, BILL OF SALES, WARRANTY DEEDS. . . cont.

III.    WARRANTY DEEDS

A. Look at:   "EXAMPLE WARRANTY DEED".

1.  Any time the Trust buys or sells a home, property, buildings or real property of any  type, there must be a Warranty Deed.

2.  Before any property is transferred into Trust the owner of the property must check with the mortgage company to receive permission to transfer the property into a "Family Holding Trust".

3.  When the Warranty Deed is completed with Notary it must be filed with the County Recorder's Office this is not optional the deed must be recorded with the county the property is in.

# SAMPLE

IF RECORDED, MAIL TO:                                                    {
                                                                        {
4321 Main Street                                                        {
 Your Town, Your State                                                  {
                                                                        {

_____

*Space above line for Recorder's use*

# BILL OF SALE

### KNOW ALL MEN BY THESE PRESENTMENTS

That I the undersigned Seller for and in consideration of the sum of.......................
**$**
paid by: **ABC Management Trust** whose mailing address is ...................
**Non Domestic Mail c/o 4321 Main Street  Your Town, Your State**
the buyers, receipt of which is hereby acknowledged, does hereby sell, assign, and
convey to the buyer,  all of seller's rights, title and interest, in and to, the following
described personal property:

**FOR DESCRIPTION OF PROPERTY SOLD SEE EXHIBIT A.**

Dated this <u>1st</u> **day of** June , **A.D. 2005**.

### SELLER:


_____
(MANAGER)

**STATE OF** <u>Your State</u>                              }
                                                          }   ss.
**COUNTY OF** <u>Your County</u>                           }


On this 1st **day of June, A.D. 2005** , before us, the undersigned Witnesses, personally
appeared, __ **Sue Doe (MANAGER)** to me known to be the individual described in and
who executed the foregoing instrument and acknowledged that he executed the same as
his free act and deed.


_____
*(Witness)*


_____
*(Witness)*

IF RECORDED, MAIL TO:

{
{
{
{
{

_____
_____
_____

*Space above line for Recorder's use*

# BILL OF SALE

### KNOW ALL MEN BY THESE PRESENTMENTS

That I the undersigned Seller for and in consideration of the sum of......................

$ __

paid by:_____ **Trust** whose mailing address is **Non Domestic**
**Mail c/o** _____ the buyers, receipt of
which is hereby acknowledged, does hereby sell, assign, and convey to the buyer, all of
seller's rights, title and interest, in and to, the following described personal property:

### FOR DESCRIPTION OF PROPERTY SOLD SEE EXHIBIT A.

Dated this _____ **day of** _____, **A.D. 200** __.

### SELLER:


_____
          **(MANAGER)**

**STATE OF**_____          }
                                        } ss.
**COUNTY OF**_____          }

On this _____ **day of** _____, **A.D. 200** __, before us, the undersigned
Witnesses, personally appeared, _____(MANAGER) to me known
to be the individual described in and who executed the foregoing instrument and
acknowledged that he executed the same as his free act and deed.


_____

# WARRANTY DEED FROM INDIVIDUAL TO TRUST

*This Warranty Deed* made the _____ day of _____, A.D. 200___,
by _____ Hereinafter called the grantor, to _____ Trust, whose
Post Office address is _____, hereinafter called the grantee: (whenever used herein the terms Agrantor@ and
Agrantee@ include all the parties to the instrument and the beneficiaries, legal representatives and assigns of individuals, and the successors and assigns of corporations).

*witnesseth* the grantor, for and in consideration of the sum of $110.00 and other valuable considerations, receipt whereof is
hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys, confirms unto the grantee all that certain land
situate in_____, _____ viz:
put legal description from current warranty deed filed with county records in this space:

If there is not enough room to put full legal description in this space, then put legal description on a separate sheet of paper
and mark the separate sheet of paper as exhibit A, and make reference to exhibit A in this space. Example:

FOR LEGAL DESCRIPTION OF PROPERTY SEE EXHIBIT A.

  *Together* with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
  *To Have and to Hold,* the same fee simple forever.
  *And* the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the
grantor has good right and lawful authority to sell and convey said land and will defend the same against the lawful claims of all
persons whomsoever; and that said land is free of all encumberances, except taxes accruing subsequent to _____Day of
, 200___.

  *In witness Whereof,* the said grantor has hereunto set hand and seal the day and year first above written.
Signed, sealed and delivered in our presence:

(S)_____      (S) _____
___ _____     _____
        (PRINT NAME)            (PRINT NAME)


(S)_____)      (S)_____
_____       _____
      (PRINT NAME)         (PRINT NAME)(GRANTOR)


(S)_____
_____
       (PRINT NAME)

_____ State    )
           )
_____ County)

  I hereby certify that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to
take acknowledgments, personally appeared _____, to me known to be the
person(s) described in and who executed the foregoing instrument and they acknowledged before me that they executed the same.
    WITNESS my hand and Official seal in the County and State last aforesaid this _____ Day of
, 119____.


   NOTARY PUBLIC

# EXAMPLE WARRANTY DEED
## MAKE SURE THAT THE UPPER LEFT HAND CORNER MATCHES WHAT YOU ARE DOING, EXAMPLE: AFROM INDIVIDUAL TO TRUST, "FROM TRUST TO TRUST", ETC.

### WARRANTY DEED FROM INDIVIDUAL TO TRUST

*This Warranty Deed* made the 5th day of June , A.D. 2006 ,
by John Doe & Jane Doe             Hereinafter called the grantor, to Me OH My Management             Trust, whose Post
Office address is _____ P.O. Box # 1234 any where U.S.A. 12345 , hereinafter called the grantee: (whenever used herein the terms Agrantor@ and Agrantee@ include all the parties to the instrument and the beneficiaries, legal representatives and assigns of individuals, and the successors and assigns of corporations).

*witnesseth* the grantor, for and in consideration of the sum of $110.00 and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys, confirms unto the grantee all that certain land situate in ANY COUNTRY, ANY STATE viz:
put legal description from current warranty deed filed with county records in this space:


If there is not enough room to put full legal description in this space, then put legal description on a separate sheet of paper and mark the separate sheet of paper as exhibit A, and make reference to exhibit A in this space. Example:

FOR LEGAL DESCRIPTION OF PROPERTY SEE EXHIBIT A.

*Together* with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
*To Have and to Hold*, the same fee simple forever.
*And* the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to 31 Day of December, 2005

*In witness Whereof*, the said grantor has hereunto set hand and seal the day and year first above written.
Signed, sealed and delivered in our presence:

(S)_____

_____(PRINT NAME)



(S)_____

_____(PRINT NAME)
NAME)
(S)_____

_____(PRINT NAME)

(S)

John Doe_____ (PRINT NAME)


(S)_____

Jane Doe_____ (PRINT NAME)
(GRANTOR)

_____ State  )
                           )
_____ County)

I hereby certify that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared John And Jane Doe , to me known to be the person(s) described in and who executed the foregoing instrument and they acknowledged before me that they executed the same.
WITNESS my hand and Official seal in the County and State last aforesaid this 5th Day of June, 2006.

**NOTARY PUBLIC**

*If recorded, mail to:*

BOARD OF TRUSTEES
_____Trust
c/o

# DECLARATION OF TRUST

### *THIS DOCUMENT IS CREATED UNDER COMMON LAW RIGHT OF CONTRACT.*

Dated_____, 200

## _____**Trust**

A Trust Organization and/or Pure Trust executed under
The Constitutional Laws of the united States of America

1-DECLARATION OF TRUST                          SEAL

_____ COUNTY )
                                                SS
_____ REPUBLIC)

## TRUST ORGANIZATION INDENTURE, CONTRACT
## AND DECLARATION OF TRUST

THE TRUST ORGANIZATION created by this Contract and Trust Indenture is authorized to exist and function through its Board of Trustees, who are Legal Persons holding full title, not as individuals, but collectively as the Board, under the name of the

_____**Trust**

and to collectively act as herein set forth and according to the inalienable Common Law rights afforded to men.

THIS Agreement, Conveyance and Acceptance is made and entered into at this time and on the date appearing in the Acknowledgment and Declaration Page attached hereto, by and between

_____    **THE SETTLER:**

who for and in consideration of One Hundred (100) Dollars cash and the acceptance by the First Trustee by and in behalf of the Board of Trustees of the properties to be conveyed, and the conditions, terms and provisions of this Indenture, the Trust Organization Bylaws, and the Resolutions of the Board of Trustees interpreting the same; and the right of the Settler to direct issuance of all Trust Certificate Units in the Trust Organization;

HEREBY offers to convey to the Board of Trustees certain properties, the nature, and identity and description of which are presently known to both the SETTLER and FIRST TRUSTEE, and which shall be further identified and described in Minute Number 1 shall be incorporated herein by reference immediately upon its execution; SETTLER warrants its authority to transfer such interest in said properties as is specified to be transferred in attached said Minute Number 1;

AND, _____, the FIRST TRUSTEE,

of *(address)*_____,_____; who by signing this indenture hereby accepts on behalf of the Board of Trustees the properties to be set forth in Minute Number 1; accepts the conditions, terms and provisions of this Indenture, the Trust Organization Bylaws, and the resolutions of the Board of Trustees interpreting the same as recorded in the minutes of its meetings from time to time, which shall serve as the governing instruments of the Board; and agrees to transfer all Trust Certificate Units in the Trust Organization in accordance with SETTLER' s direction.

AS part of the consideration here fore, SETTLER agrees and covenants that it shall not change this Trust Indenture in any manner; nor shall it reserve or retain any dominion or control over the principal or income of the Trust Estate; nor any power to change in and manner this Trust Indenture or Trust Organization Bylaws. SETTLER agrees and covenants that it shall not, and has not engaged in any secret agreements or prearrangement of any type with the Trustees of this Trust Organization, that obligates them to act in any manner in its sole interest, and not as fair, unbiased, and independent fiduciaries in the best interest of the Certificate Unit Holders.

THE acceptance and signing of the Indenture by the FIRST TRUSTEE shall constitute the first Board of Trustees, and the signing and acknowledging of appropriate Trust Minutes by subsequently appointed Trustees shall constitute their acceptance of the Trust Indenture and the Trust property in the same manner as the FIRST TRUSTEE, and the assets and emoluments thereof shall immediately vest in any new Trustee as fiduciary for the Trust Estate without further act or conveyance, except as may be required by local law. The FIRST TRUSTEE may appoint a Second Trustee and the Board of Trustees shall increase or decrease the number of Trustees as appropriate to the affairs of the Trust Organization. NO bond shall be required of the FIRST TRUSTEE, nor shall any bond be required of any future Trustee appointed to the Board of Trustees, unless the Board of Trustees, by appropriate Minute, requires such of any newly appointed Trustee. The Board of Trustees shall appoint a First Secretary, whose sole duties and powers shall be to serve as a Protector of the interests of the Beneficiaries hereof, by having the power to remove any Trustee, upon written notice, so long as said First Secretary shall, concurrently with the effective date of the removal of such Trustee, appoint a qualified and financially competent or bonded successor Trustee, who shall take office at that time; and the First Secretary shall also have the power to attest to the correctness of the Minutes and Resolutions of the Board.

THIS Trust Organization shall be originally domiciled in, and shall be interpreted and construed under the Constitution of the united States of America. The domicile, and thereby the controlling interpretational laws under which the Trust Organization shall be construed, may be changed to any other state or Nation as shall be deemed prudent, wise, necessary, or appropriate by the Board of Trustees. This Trust Organization shall enjoy the benefits of the Uniform Commercial Code adopted by the City of Washington, District of Columbia in the following citation, section 28:1-105, TERRITORIAL APPLICATION OF THIS SUBTITLE; PARTIES' POWER TO CHOOSE APPLICABLE LAW, and if deemed necessary and appropriate by the Board of Trustees, invocation of Article VI, clause 2 of the united States Constitution, THE SUPREMACY CLAUSE, if the Board of Trustees' invokes any protection, benefits and rights in any international agreement or TREATY between the united States of America and any international organization, such as the United Nations and its lessor organs, or any other nation, whether or not situs change is so ordered, and section 28:1-207, PERFORMANCE OR ACCEPTANCE UNDER RESERVATION OF RIGHTS.

**Page 2** _____ Trust *Indenture*

The principle address and situs of the Trust Organization shall be _____
, _____ USA, unless changed by the Board of Trustees in the
best interest of the administration of the Trust Organization.

THE board of Trustees shall have, except as modified by the terms of this Trust
Indenture, the  Trust Organization Bylaws, and Resolutions of the Board of Trustees
interpreting the same, all of the powers of  Trustees under the Common Law, as well as
those specified under the Uniform  Trustees  Powers Act, including, but not limited to,
the power to make any type of investment for the benefit of the Trust Estate, to borrow
money for any Trust Organization purpose, to buy, sell, hold title to and/or encumber
property of hypothecate by mortgage or deed or Trust or pledge, or otherwise take any
measures it deems appropriate to expand the capital of the Trust Estate.  The Board of
Trustees shall have all the powers necessary to operate, manage and control this Trust
Organization for the benefit of the Beneficiaries, and shall take any action which it deems
necessary and proper to carry out such purposes, provided however, that the Board shall
not possess any power to take any action contrary to law or inconsistent with the
provisions of the Trust Indenture and Trust Bylaws.  It is also expressly provided that the
Board of Trustees shall not possess or exercise any power which would by its possession
or exercise cause the income of this Trust to be taxed to the SETTLER hereof as a
Grantor Trust under he provisions of the Internal Revenue Code.

THE Board of  Trustees shall have  full authority to determine  what shall constitute
principal of the  Trust Estate, gross income therefrom, net income distributable under the
terms of this Indenture and Bylaws to the Beneficiaries, and to allocate between principal
and income, and any such determination shall be conclusive.

NOTICE is hereby given to all persons or legal entities doing business with, extending
credit to, contracting with, or having a claim against this Trust Organization, that the
Board of  Trustees is not personally liable when dealing with Trust property or matters,
and such persons must look only to the assets of the  Trust Estate for payment of, or for
settlement of any debt, tort, damage, judgment or decree, or for any indebtedness which
shall become payable thereunder.  No Trustee shall be liable for the act or omission of a
Co-Trustee, or any other person whatsoever, whether employed by such   Trustee or not,
or for anything other than his own personal breach of the Trust Contract.

ANY person shall be entitled to rely upon a copy of the original Declaration of Trust and
any instruments duly executed in accordance with the provisions thereof, to the same
extent as the original document, when such copy is approved by the Board of  Trustees.
An approved minute of the Board of Trustees authorizing what it is  they determine to do
or have done shall be sufficient evidence that such an act is within their power to those
doing business with the Trust.  Anyone lending or paying money to the Board of Trustees
shall not be obligated to see the application thereof.

**Page 3** _____ Trust *Indenture*

THIS Trust is expressly irrevocable, and may not be altered or amended in any respect except as set forth in the Bylaws, and it may not be terminated except through distributions permitted by the Indenture and Bylaws.

THIS Trust shall continue for a term of ninety-nine (99) years from the date of acknowledgment.  The procedure to follow in the case of terminations shall be specifically set forth in the Bylaws.  The Trust shall also be renewable, if renewed prior to its termination.  The procedure to follow to renew this  Trust shall be specifically set forth in the Bylaws.

THE Beneficiaries of this Trust shall be the holders of the Trust Certificate Units in the Trust Organization.  The Board of Trustees shall issue no more and no less than one-hundred Trust Certificate Units. Trust Certificate Units may be subdivided by the Board of Trustees into units of smaller denomination, or merge smaller denominations into larger ones, but the total  Trust Certificate Units shall never exceed or be less than one-hundred (100) units.  At the creation of this Trust, all Trust Certificate Units shall be transferred by the Board of Trustees; in accordance with the SETTLER's direction. The initial transfers, in the records of the Trust Organization, and such records shall be conclusive proof of the proper holder of any units issued by the Board of Trustees.  These units, following the initial transfer, shall be strictly limited in transferability, as set forth in the Bylaws.  No purported transfer by any holder shall operate to transfer any rights in any Units until and unless such transfer is first approved by the Board of  Trustees.  The number of Units held by the Beneficiary shall be their percentage of any distribution due to that Beneficiary when distributions are made.  The number of Units held shall also be the percentage such Beneficiary shall be entitled to of any Trust assets which remain at the termination of this Trust.  No title to any of the Trust assets or the income therefrom shall vest in any beneficiary until the actual termination of this  Trust, and neither the income nor principal of the Trust shall be liable for any debts of any Beneficiary.

The holding of Units does not entitle the Holder to any management power or rights; nor shall the death of a Holder, or transfer by a Holder, entitle his heirs, legal representative, or transferees to demand any division of the property of the Trust, nor entitle such to any rights whatsoever, except that any proper transfer of any Units shall entitle any new Holder to exact same rights as the old Holder.  All rights of any Holder terminate upon the death of that Holder.  No Holder shall have any power to sell, assign, transfer, or in any other manner anticipate or dispose of his Units except under the strict procedures as set forth in the Bylaws.

If any sentence, paragraph, clause, section or provision of this Trust Indenture, or the Bylaws or Minutes of this Trust, is held to be unenforceable or invalid, it shall not effect any of the remaining provisions and they shall be given legal effect nonetheless.

IN WITNESS WHEREOF, the SETTLER hereof and the FIRST TRUSTEE and Acceptor hereof in the name of the Board of Trustees, have hereunto set their hand and seals in token of the conveyance, delivery, and acceptance of property, assets or other things of value, and the obligations and duties as herein assumed by the Board of this Trust, and assent to all conditions herein as imposed and expressed, this_____ day of A.D. 200__.


_____

**SETTLER:**



_____

**First Trustee:**


_____

**WITNESS:**


_____
signature

*(ADDRESS)*
c/o_____

_____


_____
print full name


_____
**Manager**


_____
Occupation

# TRUST ORGANIZATION BYLAWS

**PURPOSE**

The SETTLER is sustained by a moral belief that man is under a great Universal Spirit to replenish the earth and subdue it. Thus it is a moral belief that all of mankind are under a Divine Mandate to establish and care for and provide an estate for survival. The wisdom, truth and good faith of this was demonstrated when the Congress of the united States of America passed Public Law 97-280 declaring the year 1983 as the year of the Bible and for all persons to live by spiritual principles no matter what label one attaches to his faith in God. Therefore, the Organizational Purpose is to sustain and improve this Trust Estate for the Trust Certificate Unit Holders to possess the things of like sufficient to provide for growth, health, protection, education, refinement, recreating, welfare, expansion, preservation and continuation.

Any and all persons may add property to this Trust Estate by gift, will, bill of sale, or by deed, with the consent of the Board.

EXPRESSED INTENT

It is expressly declared that an Unincorporated Trust Organization by Contract is hereby created, and not a Trust agreement by gift, or a partnership, or a company, or a corporation, or a joint venture, on any entity of statute. Nothing contained herein shall be construed as an intent to evade or contravene any law, nor to delegate any special power belonging exclusively to company law or to a franchise of incorporation. The expressed intent of the Parties to this Contract is to create a Trust Organization for the benefit of the Trust Certificate Unit Holders and to provide for a prudent and economical administration by legal persons acting in a fiduciary capacity, to begin at once and not deferred until after the death of any SETTLER, as requires that as a part of the consideration of this Contract, the Board of Trustees act solely upon its rights under the Constitution and the Common Law of Contract, and the immunities vouchsafed thereunder, in administering the Trust Estate according to the Trust Indenure and Bylaws.

**GRANTOR -TRUSTEES**

It is expressly provided that it is against the purpose and intent of this Trust Organization for the income of the Trust to be taxed to the SETTLER under the Grantor Trust provisions of the Internal Revenue Code. To that end, should any person become a Trustee of this Trust, and that person legally is deemed a Grantor of this Trust, such Grantor-Trustee shall be prohibited from having or exercising the following powers, to-wit:

1. A power of disposition exercisable over the beneficial enjoyment of the corpus or income of the Trust, without the approval of an adverse party Trustee;

2. A power to deal for less than adequate and full consideration, concerning the Trust;

3. A power to borrow without adequate interest and/or security from the Trust, without the approval of an adverse party Trustee;

4. A power to obtain loans from the Trust which extend past one year, and which are authorized without the approval of an adverse party Trustee:

5. A power to exercise a power of administration in a non-fiduciary capacity concerning Trust matters.

6. A power to revoke or terminate the Trust and hereby revert title to such Trustee.;

7. A power to distribute income of the Trust to such Trustee, or their spouse, without the approval of an adverse party Trustee;

8. A power to hold or accumulate income of the Trust for future distribution to such Trustee, or their spouse, without the approval of an adverse party Trustee;

9. A power to apply income of the Trust to the payment of premiums on policies of insurance on the life of such Trustee or their spouse;

10. Or any power, the possession or exercise of which would cause the income of the Trust to be taxed to the SETTLER under the provisions of the Internal Revenue Code.

In addition, in any vote concerning any matter from which any Grantor-Trustee would be excluded by operation of these rules, the vote of the Board of Trustees must be unanimous (excluding, of course, any such Grantor-Trustee, if existing). To satisfy this purpose and intent, the Board of Trustees shall always contain at least one Trustee who is deemed an adverse party Trustee under the Internal Revenue Code, and further, no member of the Board of Trustees shall possess or exercise a power of administration in a non-fiduciary capacity, nor a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or any other power, the possession or exercise of which would cause the income of the Trust to be taxed to the SETTLER under the provisions of the Internal Revenue Code.

The Board of Trustees (excluding any Grantor-Trustee) as a board shall be deemed to have a general power of appointment consistent with the provision of the Trust Indenture and these Bylaws over the Trust Estate. The appearance of any signature on any Minute of the Board of any Grantor-Trustee concerning any matter which such Grantor-Trustee has no power concerning, shall be deemed to be mere surplusage, and merely an indication that such a vote by the Board of Trustees took place, and not any indication of the exercise of a prohibited power. Should by error any Grantor-Trustee participate in any vote on a matter about which he has no power, his vote is deemed to be void and without effect.

## ADMINISTRATION

The Board of Trustees shall enter into financial transactions with any Trustee, Beneficiary, Trust managers, Officer, Executive or other related person only for adequate consideration and upon adequate security.

Any Trustee is authorized to loan or advance funds to the Trust Organization for any purpose and such loan or advance, together with stated interest, shall be a first lien against the Trust Estate, and shall be repaid therefrom, so long as any such loan advance is recorded in the Minutes of the Trust. Any Trustee is further authorized to deal with the Trust in general business matters, provided only that in all such transactions, the Trustee shall retain therein their/the fiduciary obligation. Any Grantor-Trustee shall abstain from voting if benefitting from such a transaction and the remaining Trustees must unanimously concur.

Under no circumstances shall the SETTLER have any interest in any investment made by the Board of   Trustees, other than such legal interest as would a stranger to the Trust Organization in the particular transaction. The Board is authorized to deal with the SETTLER, to purchase property, or to sell property, but always at the fair market value and for an adequate and full consideration. Nothing in this paragraph shall be construed as conferring power upon the SETTLER to require Trust Corpus, or any part thereof by substitution of other property of an equivalent value.

Funds accruing in the Treasury of the Trust shall constitute the operating funds of the Trust Estate. The Board of Trustees may authorize liquidation of assets for the purpose of adding to said operating funds. The Board shall, as it deems proper and necessary, provide for operating funds through any type of borrowing, either unsecured, or directly or indirectly secured. The Board of  Trustees may also designate third parties to hold funds for specific purposes necessary to the use of the Trust Organization.

The Board of Trustees shall pay all property taxes, assessments, charges, debts, bills and obligations arising out of the maintenance, operation and administration of the Trust Organization and Estate. There shall be a charge upon the Estate and this charge shall be paid out of the income therefrom. In the event and to the extent that the income may be insufficient for such, the charge shall be paid out of the principle. Board decisions with respect to all such matters shall be conclusive. The Board is further authorized to pay expenses of Trustees, Officers, Executive,  Trust Managers, and like persons incurred while on Trust business.

In any matter for which doing business under the Trust name is not deemed to be legal, the Board of  Trustees is authorized to do business in the name of individual Trustees with appropriate reference to their fiduciary capacity, provided that such does not affect the legality of either the business done or the Trust Organization itself.

## MANAGEMENT

The Board of Trustees shall, at its discretion, have power in connection with the management and control of the Trust Organization to appoint one of its Trustees, or a qualified non Trustee, to the position of Trust Manager(s). The Trust Manager(s) shall have full authority to manage the Trust Organization including but not limited to the routine day-to-day operations of the Trust, subject at all times to the approval of the Board of Trustees.

The Board of Trustees shall have the power to contract for the services of any assistants, agents, brokers, attorneys, barristers, solicitor, clerks, aides, contractors, sub-contractors, investment counsel, or any other as it shall deem expedient for the proper function of the Trust Organization. The Board of Trustees shall appoint a 1st Secretary as set forth in the Trust Indenture, and shall appoint such other officers and executives as it deems necessary. Reasonable compensation of all Trustees, Trust Manager(s), officers, executives or other persons, shall be fixed and paid at the discretion of the Board. All Trustees, Trust Manager(s), officers and executives shall have the right to waive any compensation for their services.

## RESIGNATION

Any Trustee shall have the discretionary power to resign in writing from the Board of Trustees. Any assistants, agents, brokers, attorneys, barristers, solicitors, clerks, aides, contractors, sub-contractors, investment counsel, Trust Manager(s), or any other shall have the discretionary power to resign in writing from the appointment or contract for services to the Trust Organization

## REMOVAL

A Trustee may be removed from office;

1. for GROSS NEGLECT OF DUTY -REMOVAL BY THE UNANIMOUS VOTE OF THE OTHER TRUSTEES, EXCLUDING ANY GRANTOR-Trustee;
2. by MANDATE OF A COURT OF COMPETENT JURISDICTION -when guilty of fraud, theft, malfeasance in office, or other sufficient legal cause;
3. by PROTECTOR -based totally on protector's discretion

In the event of incapacitation, death, resignation, or removal from office of any Trustee, the Board of Trustees shall, by unanimous vote, excluding any Grantor-Trustee, either appoint a successor Trustee, or vote to reduce the number of Trustees. Should there remain no qualified Trustees to vote for a successor Trustee, the Beneficiaries may apply to a court of competent jurisdiction to appoint one Trustee, who shall have the power to appoint other Trustees. Changes of Trusteeship for any reason shall not dissolve, terminate or impede the day-to-day operations of the Trust Organization.

## MEETINGS

The Board of Trustees shall provide for meetings at stated intervals without notice. Special meetings may be called by one or more Trustees upon three (3) days notice, which may be waived by any or all  Trustees.  A majority of all the Trustees shall constitute a quorum for conducting business at any meeting.  Participation and voting at any meeting.  Participation and voting at any meeting may be by way of telephone or other electronic process, as well as physical presence, so long as any such voting is followed with a writing to the non-present Trustee stating the particulars of such vote and a copy of any minutes recorded.

Any actions of the Board of Trustees shall require a unanimous vote.

## LIMITED LIABILITY

The Trustees shall, in their capacity as the Board of  Trustees, and not as individuals, assume or incur only liability as shall attach to the Trust assets.  This liability shall not in any manner jeopardize their individual or personal holdings, and for any losses they should suffer for any reason through rendering services as the Board of Trustees, they shall be reimbursed from the Trust property to the same extent as would non-interested persons, except for any loss sustained by reason of breach of fiduciary duty.

## TRANSFER OF TRUST CERTIFICATE UNITS

In accordance with the purposes of this Trust Organization, the transfer of Trust Certificate Units is strictly limited.  The lawful Holder of any units, as recorded in the records of the Trust, may transfer, sell, exchange or give those units to any other person or persons, provided however, that such transfer is not effective unless and until it has been approved by unanimous consent of all Trustees, excluding any Grantor-Trustees, by written Minute of the Board of Trustees.  The transfer is effective after the old Units are surrendered to the Board, the transfer is noted in the records of the Trust, and a new Certificate is issued to the new Holder.  Approval shall not be unreasonably withheld, however, in accordance with the stated purposes of the Trust Organization, approval of any transfer may be withheld if in the opinion of the Board, the transfer is an attempt to use the Holder Units as security for a loan of any nature, or is otherwise an attempt of the Holder to untimely anticipate a distributive share upon termination.  Transfers are not encouraged in any respect, except between family and relatives of Holders.  In any determination concerning the approval or disapproval of any contemplated transfer, the Board of Trustees, in its discretion, may require a sworn statement from the Holder concerning the contemplated transfer.  Any determination of the Board concerning such approval shall be final.

Any rights possessed by any Holder by reason of his holding Trust Certificate Units terminate upon the Holder's death. Any Holder may file a request with the Board of Trustees naming any person or persons to who he desires his Units to be transferred upon his death. Such requests shall be considered and approved in the same manner as other requests for transfers, and prompt notice given the Holder for requesting of approval or disapproval. If upon the death of any Holder there is contained in the Minutes of the Trust an approved transfer upon death, upon receipt of the proper notice of such death by the Board of Trustees, and other old Units, the Board shall note the transfer in the records of the Trust and issue a new Certificate Unit(s) according to such approved transfer. If no such approved transfer appears in the Minutes, then the Board of Trustees shall transfer such Units, in the same manner, on a pro-rate basis among the remaining Holders.

## DISTRIBUTIONS

If it is determined by the Board of Trustees that there is income distributable to the Holders of Trust Certificate Units, and/or income taxable to the Trust Organization is not distributed, the Board, without discretion, must distribute sufficient of such income so as to prevent such income from being taxable to the Trust Organization. If after such distribution any income remains, it shall be deemed to be principal and allocated to corpus. The proportionate share of distributed income to which each Holder is entitled is not discretionary, but is determined solely by the number of Trust Certificate Units held.

The Trust Estate may be subdivided into separate subordinate Trusts or shares, if such breakdown will, at the sole discretion of the Board of Trustees, simplify administration, avoid difficulty between Beneficiaries, or better permit the carrying out of the intent and purpose of the Trust Indenture and Bylaws. The Board may so do without being required to make physical segregation or division of assets in any respect or manner.

The Board of Trustees shall make a determination as to the existence of distributable income at convenient intervals no greater than annually.

Any Beneficiary may apply to the Board of Trustees for an advance towards future distributions of both income and principal. The Board may only consider such applications based upon emergency circumstances relating to health, education, or maintenance. The Board in its discretion may distribute to such Beneficiary, any sum which the Board feels is consistent with the purposes and intent of the Trust Indenture and Bylaws, and the rights of the other Beneficiaries. Any such distribution shall be charges to the account of such Beneficiary, and deducted from any future distribution of income. Should future income distributions be insufficient to cover any such advances, the balance of such advance shall be deducted from any share of Trust assets to be distributed to such Beneficiary upon termination. Any decision of the Board to distribute or not to distribute, to the sum of any such advance, shall be final.

No future benefit devolving on any beneficiary under the Trust Organization terms or settlement shall form or constitute a portion of any communal or joint estate of such Beneficiary, but shall be and remain the sole, separate and exclusive property of such Beneficiary.

Should such Beneficiary be married or marry in community of property, then any benefit so accruing shall be expressly excluded from the community. Such benefit shall also be free from the interference, control, or marital power of any spouse of such Beneficiary. For the purposes of this paragraph, the term @benefit? shall include movable and immovable property, and the provisions of this paragraph shall apply moreover not only to the benefit actually delving on such Beneficiary, but also to any and all benefits at any time thereafter directly or indirectly acquired by means of the proceeds thereof.

## TERMINATION

Upon the expiration of the term of this Trust, the Trust Organization shall automatically expire. The Board shall have the continuing authority to act to wind up the affairs of the Trust Organization, as is necessary past the date of expiration. In the event that the Trust Indenture was recorded, a Notice of Termination shall also be recorded, and published as necessary. The Board of Trustees shall pay all remaining obligations of the Trust Organization, and distribute the remaining assets to the Beneficiaries in direct proportion to the number of Trust Certificate Units held. Upon receiving receipts for the distribution of the remaining assets to the Beneficiaries, the Trustees shall be automatically discharged hereunder, provided that their administration and distributions have been made in accordance with the terms and provisions of the Trust Indenture and Bylaws. Otherwise, a court of competent jurisdiction may be called upon to review and correct any tort or error.

## RENEWAL

The Board of Trustees shall have the power to renew the Trust Organization for any reasonable term, not to exceed the original term, if it is deemed by the Board to be in the best interest of the Beneficiaries and none of them object. If any Beneficiary objects, the Board may, in its discretion, distribute to that Beneficiary such portion of the Trust assets as he would have been entitled to had the Trust terminated, and continue the Trust Organization as to the remaining Trust Assets and Beneficiaries. In that case, the Board shall call in all Trust Certificate Units and redistribute them to reflect the remaining Beneficiaries' interests. A resolution of any such renewal shall be entered in the Minutes of the Trust. If the Trust Indenture has been recorded, notice of renewal shall also be recorded, and published as necessary. Any vote concerning renewal shall take place not more than one hundred twenty (120) days and not less than sixty (60) days from the date the Trust is due to expire. If the Trust is renewed, it may in like manner be renewed again before the end of any renewal term.

## AMENDMENTS

The Board of Trustees shall have the power to amend the Trust Indenture and/or Bylaws to better carry out the purposes and intent thereof, or in order to conform to or comply with any law, rule, regulation, or order of any government body, provided however that any such amendment may not be inconsistent with the basic Trust Organization purposes and intent, not in derogation of the fiduciary obligations to the Trust Certificate Unit Holders.

Any Grantor-Trustee shall abstain from voting on any amendments, and the remaining Trustees must vote unanimously for any such amendments to pass and take effect.

IN WITNESS WHEREOF, the SETTLER hereof and the FIRST TRUSTEE  and ACCEPTOR hereof in the name of the Board of Trustees, have hereunto set their hand and seals in token of the acceptance of, assent to and covenant to abide by all conditions herein imposed and expressed, this___ day of _____A.D., 200__.

**SETTLER:**

**First Trustee:**

**WITNESS;**

_(ADDRESS)_
c/o _____

**(MANAGER)**
**Print full name**

SCHEDULE A

_____COUNTY                                    )
                                                                          )ss
_____REPUBLIC                                 )

Entered into this date by and between the SETTLER hereto and the FIRST TRUSTEE, of
_____**Trust**

in harmony with the Trust Indenture and the Trust Organization Bylaws, hereby conveys
in the Board of Trustees the following described property, and the accepted by the FIRST
TRUSTEE by and on behalf of the Board.  This list of property is comprehensive, and is
the written description of those certain properties which were agreed upon and known to
both the SETTLER and the FIRST TRUSTEE at the time of the execution of the Trust
indenture, and includes all properties transferred and accepted, to wit:

REAL ESTATE

NONE

PERSONAL PROPERTY

CASH;   One hundred Dollars ($100.00)
SECURITIES:  NONE
INSURANCE:   NONE
MOTOR VEHICLES;   NONE
OTHER:  NONE

IN WITNESS WHEREOF, we have hereunto set our hands and seals, on this\_\_ day of
_____, 200\_\_\_.

_____                          _____

**SETTLER:**                                                               **FIRST TRUSTEE**

_____

**WITNESS:**

**Print Full Name**                                                  *(ADDRESS)*
                                                                          c/o_____

_____                          _____

To: BOARD OF TRUSTEES

_____Trust

c/o_____

_____

_____


RE: Initial issuance of Trust Certificate Units


Dear Sirs:

I am writing this letter as my statement of record which is in accordance with the Trust Indenture and the Trust Bylaws of

## _____**Trust**

to be signed this date, directing you, as the Board of Trustees, to make the initial issue of the one hundred (100) Trust Certificate Units to the following entity.


| | |
|---|---|
| _____ | ___ TRUST CERTIFICATE UNITS |
| _____ | ___ TRUST CERTIFICATE UNITS |
| _____ | ___ TRUST CERTIFICATE UNITS |
| _____ | ___ TRUST CERTIFICATE UNITS |


I would appreciate and am thanking you for your immediate attention to this matter.



Respectfully Yours,


_____    Date

**SETTLER:**

## MINUTES OF MEETING #1, BOARD OF TRUSTEES

_____Trust

c/o


_____, 200____

With all of the Board of Trustees in attendance, the following Minutes were duly adopted and approved by unanimous consent as Minutes of the First Meeting of the Board of Trustees:

## MINUTE NUMBER 1
In accordance with the Trust Indenture and the Trust Organization Bylaws executed this date by and between the SETTLER hereof and the FIRST  Trustee, the following described property is hereby conveyed unto the Board of  Trustees:

The full list of described property is attached to the  Trust Organizational documents as page _____ entitled SCHEDULE A, and signed by the SETTLER and FIRST TRUSTEE.  Said Schedule A is accepted and ratified as being the true and correct list of all properties conveyed to and held by the Board of  Trustees as of this date.

## MINUTE NUMBER 2:
In accordance with the Trust Indenture and the  Trust Organization Bylaws executed this date by and between the SETTLER thereof and the FIRST Trustee, the Board of Trustees acknowledges the written instructions of the SETTLER concerning the issuance of the Trust Certificate Units and acknowledges the issuance of 100 Trust Certificate Units in the following manner, according to the wishes of the SETTLER, to wit:

_____      ____  TRUST CERTIFICATE UNITS
_____      ____  TRUST CERTIFICATE UNITS
_____      ____  TRUST CERTIFICATE UNITS
_____      ____  TRUST CERTIFICATE UNITS


Said Certificate(s) is hereby registered in the Records of the Board of  Trustees.

## MINUTE NUMBER 3:
The Board of Trustees appoints (MANAGER), to be the First Secretary of the Board of Trustees.  The First Secretary shall serve as the Protector of the interests of the Beneficiary(ies) according to the Trust Indenture and the Trust Bylaws.  The First Secretary shall have the power to attest to the correctness of: original Minutes, copies of original Minutes, Resolutions and Records, as well as the Trust Indenture and Bylaws.

**MINUTE NUMBER 4:**

According to the dictates of united States Supreme Court in the case of Boyd v.U.S., 166 US 618(1886) and the case of Silverthorn v. U.S. 251 385 (1920); the Board of Trustees hereby declares all Minutes of this Trust to be private and inviolable, and therefore are not to be loaned, read, or disclosed to anyone at anytime, unless it is determined by unanimous consent of the Board that disclosure of a particular Minute would be in the best interest of the Trust Organization. The dictates alluded to above are as follows:

AAny compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of a crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishmen; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot be pure atmosphere of political liberty and personal freedom.

**MINUTE NUMBER 5:**

The Board of Trustees declare the fiscal year of the Trust Organization to be the calendar year. The Board shall have the power to change such fiscal year by subsequent Minute if it is determined to be in the best interest of the Trust Organization to do so.

**MINUTE NUMBER 6:**

The Board of Trustees hereby authorizes application to the Internal Revenue Service for the Trust's Bank Identification Number on IRS Form SS-4.

**MINUTE NUMBER 7:**

Until changed by future Minute, the annual meeting of the Board of Trustees of:

**_____Trust**

shall be held on (DATE) _____ each year, at _____, without further notice.

**MINUTE NUMBER 8:**

Special meetings called in accordance with the Bylaws may be held at any time and/or any place in the best interest of the Trust Organization.

**MINUTE NUMBER 9:**

Should any Trustee vote against any measure being passed upon by the Board of Trustees, and such measure pass in spite of such negative vote, said Trustee shall, when the Minute evidencing such measure is signed, sign their name thereto with the following beside it; "Dissents to Minute Number _____." with the appropriate minute number filled in.

**MINUTE NUMBER 10:**
It being in the best interest of the Trust Organization to continue operation in as smooth a manner as possible, should any Trustee by unable to continue their duties due to death, resignation, or removal from office, should such happen, the Board of Trustees hereby nominated the following named Successor Trustees to take the place of the following named Trustees in the event that the Board desires to fill the vacancy so created, rather than to reduce the number of Trustees on the Board:

**FIRST TRUSTEE:**
Successor Trustee- _____

Any such death, resignation, or removal from office of any Trustee shall be noted in the Minutes of the Trust Organization, along with the decision of the Board to either fill the vacancy so created, or to reduce the number of Trustees. Should the Board vote to fill such vacancy, the Successor Trustee shall be immediately notified by Certified Mail of their conditional appointment shall be by special meeting called for such purpose and with an appropriate Minute signed by the accepting Trustee. Upon the appointment of any new Trustee to the Board of Trustees, the Board shall in this same manner nominate a Successor Trustee for such new Trustees.

The First Secretary is hereby authorized to notify in writing any Successor Trustee of their possible appointment to the Board of Trustees, and solicit from them a reply as to how they would respond should they indeed be appointed, and to place any such responses in the Records of the Trust Organization.

Any nominations made hereby, and any further nominations made may be changed by appropriate Minute.

The Board may in its discretion, by appropriate Minute, allow for the pre-acceptance of the position of Trustee by any Successor Trustee. The effect of any such pre-acceptance shall be to make the appointment of such Successor Trustee automatic upon receipt by such Successor Trustee of written notice of the death, resignation, or removal from office of the Trustee they are named to succeed. No further action of the Board of Trustees shall then be necessary to enable such Trustee to exercise the full powers of Trustee of this Trust Organization. However, an appropriate Minute shall be made reflecting that such has taken place as soon hereafter as conveniently possible.

**MINUTE NUMBER 11:**
The Board of Trustees shall reimburse any Trustee for all necessary expenses incurred by such Trustee for travel on the business of the Board, as well as any expenses incurred by such Trustee incidental to his service as Trustee. To receive repayment of any such expense, the Trustee must submit to the Board written evidence of such expense. such as a written log of travel, gas receipts, meal receipts, lodging receipts, and the like.

The Board may in its discretion, prepay the expenses of any such travel of work for the Board by any Trustee. Such Trustee shall account to the Board for the expenditure of such prepayment and reimburse the Board for any overpayment.

**MINUTE NUMBER 12:**
It being the intent of the SETTLER hereto to preserve this Trust Estate, it shall be the policy of the Board not to employ the services of any individual, including any Trust Manager(s), unless such can be done on an Independent Contractor and/or Contract Worker basis, to eliminate the added expense of Social Security Taxes, Unemployment, Taxes, Workmen's Compensation Insurance, and the like.

**MINUTE NUMBER 13:**
The Board of Trustees hereby authorizes the Board as a whole to receive as compensation for their Service, Fifty Dollars ($50.00) annually. Compensation to be received by Trustees may be increased by appropriate Minute, but may not be decreased without the consent of all Trustees. Annual compensation shall be prepaid at the outset of the fiscal year from the profits of the previous year, prior to the distribution to any Certificate Holder. The initial compensation shall also be prepaid, but not by the SETTLER.

**MINUTE NUMBER 14:**
The Board of Trustees hereby authorizes the appointment of:

_____, as General Trust Manager, and vest the Trust Manager(s) with full authority to execute the business affairs of:

_____**Trust**

and to see to the proper maintenance and upkeep of the assets. The General Trust Manager(s) shall enter into an Independent Contractor Agreement which shall more specifically enumerate, delineate, and define the powers, requirements and responsibilities of said General Trust Manager(s). Said contract shall set forth the compensation, if any, which the General Trust Manager(s) shall receive for services rendered; it shall be renewable upon an annual basis at the discretion of the Board of Trustees, which renewal may be done at the annual meeting.

**MINUTE NUMBER 15:**
All reference to the Board of Trustees, Board, Trustees, or Trustee, in the Trust Indenture, Trust Organization Bylaws, these Minutes, or other documents concerning this Trust, shall mean one and the same thing: _____,until further Minute specifying the appointment of additional Trustees.

**MINUTE NUMBER 16:**
All Minutes, Resolutions, Records or other Documents concerning this Trust shall include the signature of the Trust Officer for the FIRST TRUSTEE.

THERE BEING NO FURTHER BUSINESS TO COME BEFORE THE MEETING, UPON A MOTION DULY MADE, SECONDED AND CARRIED, THE MEETING WAS ADJOURNED.

**First Trustee:** _____

MINUTES OF MEETING #2, BOARD OF TRUSTEES
LETTER OF INSTRUCTION AND INTRODUCTION from Board of Trustees
_____Trust

c/o _____

_____

_____, 200

**MINUTE NUMBER 17:**
On this date a Special Meeting of the Board of Trustees for,
_____**Trust,**
was called, pursuant to the Trust Indenture and the Trust Bylaws.  The Board of Trustees issued a LETTER OF INSTRUCTION AND INTRODUCTION to be used by the General Trust Manager(s) when they deem necessary for introduction and identification. On this date the following Minute #14 from Meeting #1 of the Board of Trustees was mandated to be recorded in this letter as part of the official records of the Trust Organization:

**MINUTE NUMBER 14:**
The Board of Trustees hereby authorizes the appointment of
_____, *as* **General  Trust Manager,**

and vest the Trust Manager(s) with full authority to execute the business affairs of:
_____**Trust,**

and to see to the proper maintenance and upkeep of the assets.?

These duties include but are not limited to the day-to-day operations of the Trust Organization, WITH FULL AUTHORITY.  This single page is A COPY of a quote from MINUTE NUMBER 14 and may be used by the General Trust Manager(s) when deemed necessary and this single page, being unanimously accepted by the Board of Trustees as a LETTER OF INSTRUCTION AND INTRODUCTION, becomes part of the official record of the Trust Organization labeled MINUTE NUMBER 17.  There being no further business, a motion duly made, seconded and carried, the meeting was adjourned.

First  Trustee: _____