**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>) Civil Case No. 6:08-cv-3760-GRA<br>v. )<br>)<br>)<br>JOHN HOWARD ALEXANDER, )<br>a/k/a HOWARD IRA SMALL, )<br>individually and as TRUSTEE OF THE )<br>ALEXANDER FAMILY TRUST )<br>)<br>)<br>Defendant. )<br>)<br>**)** | **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT** |

### I. INTRODUCTION

COMES NOW Defendant, JOHN HOWARD ALEXANDER, a/k/a Howard Ira Small, and the Trustee of the Alexander Family Trust, by and through counsel, who opposes the government's motion for summary judgment. For the reasons stated herein, Mr. Alexander asserts there are genuine issues of material fact in this matter ripe for trial and as such he seeks an order of this Court denying the government's motion for summary judgment.

### II. BRIEF STATEMENT OF FACTS

The government has brought this action alleging Mr. Alexander is a tax protestor who has failed to pay income taxes and has violated 26 U.S.C. § 6700, requiring the assessment of penalties thereon pursuant to the statue. In doing so, the government alleges that via the Aware Group and the Freedom Trust Group, two companies formerly owned and operated by Mr.

1

Alexander and his former spouse, Ms. Heather Ferguson, Mr. Alexander engaged in tax protestor actives. According to the government, these activities include the dissemination of false or fraudulent information to third parties regarding their obligation to pay income taxes. It alleges Mr. Alexander derived a financial benefit from conduct in violation of Section 6700.

Mr. Alexander maintains that he is not a tax protestor, but rather an individual who acquires various types of information, disseminating that information for third parties to review, research and conduct further study upon. In doing so, Mr. Alexander was careful not to encourage or advise individuals not to pay their income taxes. However, despite Mr. Alexander believing he was engaging in legal activity, when requested by the government to stop the dissemination of the information he did so.

The government now seeks to assess penalties against Mr. Alexander for the operation of the foregoing companies and his alleged failure to pay income tax, seeking foreclosure of property the government believes Mr. Alexander has interest in. For the reasons set forth herein below, Mr. Alexander opposes the government's motion and request for relief.

### III. ARGUMENT

#### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Thus, to prevail on a motion for summary judgment, the moving party must demonstrate to this Court that 1) there is no genuine issue as to any material fact; and 2) that it is entitled to summary judgment as a matter of law. A fact is deemed "material" if proof of its existence or

nonexistence would affect the disposition of the case under applicable law. *Anderson vs. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In making its determination as to whether or not a genuine issue exists, this Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States vs. Diebold, Inc.* 369 U.S. 654, 655 (1962).

The burden is on the moving party to demonstrate there is no genuine issue of material fact. *See Celotex Corp. vs. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets this threshold, then the non-moving party must demonstrate that specific, material fact(s) exist, which gives rise to a genuine issue in order to survive the motion for summary judgment. The non-moving party may not merely rely on the allegations set forth in its pleadings. *Id.*

    **B. Argument**

    1. <u>Mr. Alexander's Alleged Penalty Conduct Under 26 U.S.C. § 6700 & The Resulting Assessments.</u>

The government seeks a judgment of this Court with respect to two sets of tax assessments made against Mr. Alexander. The first assessment is for alleged civil penalties levied under 26 U.S.C. § 6700, which the government contends are the result of Mr. Alexander promoting a fraudulent tax scheme from 2000 to 2004. The second assessment is for alleged unpaid income taxes for 1990 through 1995. Each of the foregoing assessments and the government's request for summary judgment is discussed and opposed for the reasons stated herein below, as well as based on the deposition testimony of: Mr. Alexander and Heather Ferguson (Mr. Alexander's former spouse), provided under separate cover.

    a. Alleged Violations of 26 U.S.C. § 6700.

3

The government contends Mr. Alexander violated the provisions of 26 U.S. C. § 6700 by selling memberships and distributing material through two organizations known as the Aware Group and the Freedom Trust Group and it seeks a finding by this Court of the same.

In order to establish Mr. Alexander violated Section 6700, the government is required to prove that Mr. Alexander: 1) organized or sold, or participated in the organization or sale of, a plan or arrangement; 2) made or furnished false or fraudulent statements concerning the tax benefits to be derived from the plan or arrangements; 3) knew or had reason to know that the statements were false or fraudulent, and 4) the false or fraudulent statements pertained to a material matter. Government's Memorandum at page 19 (citing 26 U.S.C. §§ 6700(a), and 6703(a); *United States vs. Benson,* 561 F.3d 718, 721-22 (7th Cir. 2009)).

There is no dispute that Mr. Alexander, and his former spouse, Heather Ferguson, operated the companies known as the Aware Group and the Freedom Trust Group. What is at issue in this case is whether or not the operation of those two entities constituted a violation of 26 U.S.C. § 6700.

Section 6700 provides:

(a) Imposition of penalty.--Any person who--

(1)(A) organizes (or assists in the organization of)--

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated. Notwithstanding the first sentence, if an activity with respect to which a penalty imposed under this subsection involves a statement described in paragraph (2)(A), the amount of the penalty shall be equal to 50 percent of the gross income derived (or to be derived) from such activity by the person on which the penalty is imposed.

(b) Rules relating to penalty for gross valuation overstatements.--

(1) Gross valuation overstatement defined.--For purposes of this section, the term "gross valuation overstatement" means any statement as to the value of any property or services if--

(A) the value so stated exceeds 200 percent of the amount determined to be the correct valuation, and

(B) the value of such property or services is directly related to the amount of any deduction or credit allowable under chapter 1 to any participant.

(2) Authority to waive.--The Secretary may waive all or any part of the penalty provided by subsection (a) with respect to any gross valuation overstatement on a showing that there was a reasonable basis for the valuation and that such valuation was made in good faith.

(c) Penalty in addition to other penalties.--The penalty imposed by this section shall be in addition to any other penalty provided by law.

The government asserts Mr. Alexander's involvement in the operation of the Aware Group and the Freedom Trust Group violated Section 6700 in that it asserts it is a "plan" as that term is used in Section 6700(a)(1)(A)(iii). In doing so, the government contends that the materials the members of the Aware Group and/or the Freedom Trust Group received were

designed to assist the members and customers of the aforementioned companies to evade paying income taxes.  However, the discovery to date, including the deposition testimony of Mr. Alexander and Ms. Ferguson, demonstrates that the Aware Group and the Freedom Trust Group were two entities that were primarily designed to exchange information.

Ms. Ferguson testified during her deposition that neither she nor Mr. Alexander told any member or customer of either organization that they did not have to pay their income taxes (Deposition Transcript of Heather Ferguson at p. 52, lines 10-14 and lines 15-24).  Rather, the information that was provided to the customers and members of the Aware Group and the Freedom Trust Group was "here's this information. You read it. You decide." *Id.*  Further, Ms. Ferguson stated that Mr. Alexander went out of his way NOT to make any representations that the information was to help individuals avoid paying income tax.  *Id.*  And neither Mr. Alexander nor Ms. Ferguson held themselves out to be tax experts or attorneys.  (Deposition Transcript of Heather Ferguson at p. 54).  For all intents and purposes, the Aware Group's function was to collect and share information with its members that was already in circulation.

Further, the Freedom Trust Group provided its members with software that had five different types of trusts "where you could write your own trust, and then there was a manual on…how to properly set up trusts." (Deposition Transcript of Heather Ferguson, at p. 64, lines 21-25 through p. 65, lines 1).  Customers of the Freedom Trust Group purchased the software to be able to write their own trusts not to create vehicles by which to evade taxes.  Ms. Ferguson explained it as follows:

> It was just a form of asset protection.  It was like, it, like the story that was used was that you're in a car accident, you know, and they sue you, you know….  It's just like you had an LLC or something you set up to protect yourself….The trusts were never presented as tax havens or tax avoidance or anything like that.

(Deposition Testimony of Heather Ferguson at p. 66, lines 7 – 25).

6

Contrary to the government's assertion that the information provided to the customers of the Aware Group and the Freedom Trust Group were tax fraud schemes, what was provided was merely information that was prepared by third parties and disseminated either on the internet or other means of public information sharing mechanisms. The information was NOT represented as a means to avoid taxes or to create tax shelter trusts. Mr. Alexander did not indicate that the information was true and accurate. Rather, Mr. Alexander merely compiled the information and presented to the members and customers of his companies that the information was for them to read, study and consider. The Aware Group was a clearing house for information. Mr. Alexander even went out of his way not to represent that the information was to be used to avoid paying taxes.

The government directs this Court to Mr. Alexander's consent to the injunction requiring him to stop the dissemination of the materials supplied to the members and customers of the Aware Group and the Freedom Trust Group as evidence that Mr. Alexander knew the information he was providing was false or fraudulent. *See United States vs. Alexander,* Case No. 6:06-cv-01862-HFF (D.S.C.). However, Mr. Alexander has maintained that what he was doing was essentially acting as a "central point" for information, "recirculating the information coming to [him] and putting it back out, encouraging people to study…." (Deposition Transcript of John Howard Alexander at p. 61, lines 6-9). When requested by the government to stop the dissemination of those materials he cooperated and agreed not to continue to do so. It appears Mr. Alexander's cooperation with the government is now being used against him to prove the government's allegations.

Finally, the government asserts the information Mr. Alexander disseminated was false or fraudulent, and he knew or should have known that it was false or fraudulent, and it pertained to

7

a material tax matter. However, Mr. Alexander did not promote any of his materials or "packages" as a means by which his customers could avoid paying taxes; nor did Mr. Alexander represent that the information he was providing was true and legally accurate. He was simply letting individuals know what third parties are discussing and considering. Mr. Alexander's customers were not paying money to buy Mr. Alexander's absolution from paying taxes. Rather, they were paying Mr. Alexander to compile information regarding these issues that had been prepared by third parties so they could consider the information for themselves; and that is exactly what Mr. Alexander told them to do. Further, the trust information was designed for asset protection not tax avoidance and customers were not told that the information was prepared by an attorney or legally accurate.

Thus, Mr. Alexander asserts his role in these companies does not give rise to a violation of 26 U.S.C. § 6700 and that there is a genuine issue as to whether his conduct violated Section 6700.

    b. Civil Penalty Assessments Resulting From Alleged Violations of 26 U.S.C. § 6700.

While Mr. Alexander maintains there is a material issue regarding whether or not he violated Section 6700, even if this Court finds he has violated this section, he seeks an order of this Court denying the government's request for a judgment in the amount of $1,152,000.00.

The government contends that based on the information it received from Ms. Ferguson on the number of customers of the Aware Group and the Freedom Trust Group between 2000 and 2004, Mr. Alexander should be assessed a penalty in the amount of $1,152,000. Further, the government asserts the burden is on Mr. Alexander to demonstrate that that the income he derived is of a lesser amount in order for the penalty amount to be reduced.

8

26 U.S.C. § 6700(a) provides "with respect to each activity…a penalty equal to $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived…from such activity."  In determining the amount of the penalty to be so assessed the government relied on information provided to it by Ms. Ferguson to determine the number of "activities".  In the same breath, the government is rejecting her deposition testimony regarding the gross income derived from such "activities."

It is undisputed that Ms. Ferguson, not Mr. Alexander, was the business manager of the Aware Group and the Freedom Trust Group, thereby managing all financial transactions of those companies.  Further, it was Ms. Ferguson, not Mr. Alexander, who maintained all the records and those records were provided to the IRS by Ms. Ferguson at the request of the IRS.  *See* Deposition Testimony of Heather Ferguson.  The government does not dispute that Ms. Ferguson maintained all the financial records of the entities at question in this action nor that she provided copies of records to the IRS.  Also, Ms. Ferguson indicated during her deposition testimony that SHE BURNED all other records.  *See* Deposition Testimony of Heather Ferguson.

The records Ms. Ferguson provided to the IRS, and consequently thereby to the government, reflect the number of alleged customers of the Aware Group and the Freedom Trust Group.  Mr. Alexander does not have any records to dispute this assertion.  However, contrary to the government's claim, Ms. Ferguson testified that customers paid a onetime membership for life fee of either $240 to $295.00 (Deposition Testimony of Heather Ferguson at p. 20, lines 16-22).  Utilizing the higher membership dues amount, this is still substantially less than the $1,000.00 penalty the government has assessed per customer and which it seeks as a judgment from this Court (1,152 members at a rate of $295.00 totals $339,840 versus the $1,152,000 levied by the government to date, less than 1/3 of the government's claim).

Thus, the government's assertion that Mr. Alexander has failed to meet his burden of proof is disingenuous as to the gross income derived from his activities the government alleges violates Section 6700. Mr. Alexander is permitted to rely on the discovery obtained in this case to date. Further, all records maintained by Ms. Ferguson have either been turned over to the IRS or burned. Based on the records received, the government has assessed Mr. Alexander a total customer base of 1,152. While Mr. Alexander has no evidence to dispute the number of customers attributed to his companies, by and through the discovery process, he does have evidence disputing the government's alleged assessment of penalties against him. Ms. Ferguson testified that each customer was assessed a one-time fee of between $240.00 and $295.00. Accordingly, even taking the higher dues price, the evidence indicates the penalty against Mr. Alexander should be assessed a penalty substantially less that the government seeks in this case.

As there is a material issue as to the amount of the penalty to be assessed herein, Mr. Alexander seeks an order either denying the government's request for summary judgment or assessing a penalty substantially less than that claimed by the government in this action.

2. Government's Income Tax Assessments for 1990-1995

The government seeks a judgment against Mr. Alexander for unpaid taxes for the years 1990-1995. In doing so, the government alleges this Court should enter a judgment in favor of the government based on its tax assessments utilizing statistics obtained from the Bureau of Labor Statistics. It maintains that the burden is on Mr. Alexander has the burden of proving the assessments inaccurate.

However, Mr. Alexander maintains that he earned no income during the periods of time alleged by the government. Mr. Alexander has no records to produce to verify he was not earning income, with the exception of the undisputed fact that in 1991 he filed for bankruptcy

10

and those records reflect that he was not earning enough income to pay all of his obligations and his sworn testimony taken via deposition.  During the time the government claims he was earning an income for which he should have paid income taxes, Mr. Alexander was caring for his sick mother.

Accordingly, Mr. Alexander asserts that based on his filing for bankruptcy there is a genuine issue of material fact as to whether or not he was earning an income as assessed by the IRS and he seeks an order of this Court denying the government's motion for summary judgment as to this issue.

3.  Foreclosure of Federal Tax Liens Against Trust Property

As set forth herein above, Mr. Alexander asserts this Court should deny the government's request to foreclose on the federal tax liens it levied against Mr. Alexander and the property held in trust based on the fact that there are 1) material issues of fact yet to be resolved in this case regarding whether or not Mr. Alexander violated Section 6700; 2) if this Court finds Mr. Alexander did in fact violate Section 6700, what amount of penalties should be assessed and 3) the amount of taxes Mr. Alexander owes, if any, for the years 1990-95.

However, if this Court does assess the aforementioned tax liens against Mr. Alexander, Mr. Alexander asserts this Court has no authority to foreclose upon the property located in the Alexander Family Trust; property Mr. Alexander asserts does not belong to him and to which he has no interest.

Undersigned counsel is informed and believes the Alexander Family Trust was established for the benefit of Mr. Alexander's only child.  Under South Carolina law, to constitute a valid trust, the trust must seek a valid, legal purpose.  *See* 90 C.J.S. *Trusts* § 22 (2008) ("A trust may be created for any purpose that is not illegal. In the absence of a statute to

the contrary, a settlor may create a trust for any lawful purpose ...")  Further, S.C.Code Ann. § 62-7-404 states that a trust must be created only to the extent its purposes are lawful and possible to achieve.  In the instant case, there is no evidence, other than the government's speculation, that the Alexander Family Trust is an illegal vehicle that was created to prohibit liens or creditors from attaching judgments against the property.  Upon information and believe of counsel, Mr. Alexander has maintained the property is being held for the benefit of his only heir and his mother's only grandchild – a legal and valid purpose of this trust.  Accordingly, Mr. Alexander seeks an order of this Court denying the government's motion for summary judgment thereon.

4. <u>Declaratory Relief Regarding Tax Liabilities</u>

By and through his counterclaim, Mr. Alexander does not seek to preclude the government from assessing legitimate income taxes against him in the future.  Rather, Mr. Alexander merely seeks to challenge the government's assessments against him herein.

## IV. CONCLUSION

For the foregoing reasons, the Defendant respectfully requests this Court deny the government's request for summary judgment.

Respectfully submitted this 27th day of October 2009

*Bradley Bennett*
_____
BRADLEY BENNETT
Attorney for Defendant

SALVINI & BENNETT, LLC
101 W. Park Ave.
Greenville, SC 29601
Telephone No.: (864) 232-5800
Facsimile No.:  (864) 232-5888