## UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No.: 6:08-cv-03760-GRA |
| | ) | |
| v. | ) | |
| | ) | |
| John Howard Alexander, a/k/a Howard | ) | **ORDER** |
| Ira Small, Individually and as Trustee | ) | (Written Opinion) |
| of the Alexander Family Trust, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the Court to resolve certain settlement issues in this action, and upon the Government's Motion for Summary Judgment. For the reasons discussed herein, this Court finds that the Parties did not consummate an enforceable settlement agreement, and this Court GRANTS the Government's Motion for Summary Judgment.

### Background

This is a civil action in which the Government alleges that John Alexander, also known as Howard Ira Small ("the Defendant"), refused to pay certain assessed tax liabilities and promoted numerous tax fraud schemes. The Government filed a Motion for Summary Judgment on September 25, 2009. The Defendant filed a Response opposing summary judgment on October 27, 2009, and also sought a declaratory judgment that there is no legal basis for the Government to seek either

unpaid taxes or penalties against him, and that the Alexander Family Trust properly owns the Greenville Property at issue in this case. On November 6, 2009, the Government filed a Reply to that Response.

On January 14, 2010, the Defendant and the Government engaged in a protracted and tense settlement conference mediated by U.S. Magistrate Judge William M. Catoe. The Parties ultimately reached a proposed settlement on January 15, 2010. Although the Defendant tentatively agreed to the settlement terms on the record in Judge Catoe's courtroom, the Defendant later refused to move forward with the settlement before any documents were signed or exchanged. Given the Defendant's refusal to move forward, the Government has also communicated to this Court its reluctance in moving forward with the settlement.

## Discussion

A.    Potential Settlement Agreement

As an initial matter, this Court finds that although the discussions on January 14 and 15 constituted a tentative resolution, the Parties did not enter into a final and enforceable settlement agreement.

District courts possess the inherent authority to enforce settlement agreements and to enter judgment based on their terms. *See, e.g., Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997); *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir.1988). The U.S. Court of Appeals for the Fourth Circuit has laid out several factors a court must consider before enforcing a settlement agreement:

Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions. If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily. Instead, when such factual disputes arise, the court must "conduct a plenary evidentiary hearing in order to resolve that dispute," and make findings on the issues in dispute. If a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement.

*Hensley v. Alcon Labs., Inc*., 277 F.3d 535, 540-41 (4th Cir. 2002) (internal citations omitted).

Here, it is beyond factual dispute that the Parties never reached a complete agreement. First, neither the Government nor the Defendant seeks to enforce any alleged settlement agreement. Quite the contrary, both Parties have expressed through their counsel that neither of them wish to finalize the settlement process. Accordingly, the Parties have essentially agreed that there is no agreement. It is axiomatic that no factual dispute can exist when both parties agree on the pertinent details.

Second, in the on-the-record hearing before Judge Catoe, the Parties continued to hash out and modify the terms of the proposed agreement. (Tr. of Settlement Conference, Jan. 15, 2009, at 3-4, Dkt. No. 52.) After these proposed revisions were discussed, Judge Catoe told the Government to "get the thing done in writing to [the Defendant]." (*Id*. at 4.) The Government's attorney then explained

that he "should have a *proposed* judgment to [the Defendant's attorney] by the close of business today." (*Id*.) (emphases added). Clearly, the Parties did not intend their oral discussions to constitute a final verbal settlement agreement. Rather, this is similar to the situation before the Fourth Circuit in *U.S. v. Newport News Shipbuilding & Dry Dock Co.*, 571 F.2d 1283, 1286 (4th Cir.1978). In that case, the Fourth Circuit held that since it was understood that a tentative agreement was to be reduced to a written settlement offer, it was not a binding agreement. *Id*. at 1286-87. The Fourth Circuit further held an evidentiary hearing in that case was unnecessary because there was "no real dispute about the facts . . . ." *Id*. at 1286.

Third, the proposed final settlement order submitted by the Government after the hearing delves into a level of specificity and precision not present in the oral discussions. It is apparent from the proposed agreement, which prompted the Defendant's refusal to move forward, that this document, if signed, would have constituted a final settlement agreement in this case. That no one ever signed the agreement demonstrates that the Government and the Defendant never reached an accord. Because it is beyond factual dispute that there was no final settlement agreement in this case, this Court finds a hearing on this issue unnecessary. Therefore, this Court must decline to enforce any settlement in this case and proceed to the pending Summary Judgment Motion.

B.     Summary Judgment

In their Motion for Summary Judgment, the Government seeks the following specific forms of relief from the Court:

•     to reduce to judgment the Government's federal income tax assessments made against the Defendant;

•     to reduce to judgment the Government's civil penalty tax assessments made against the Defendant under 26 U.S.C. § 6700;

•     to determine that under South Carolina and federal law, the Defendant has a property interest in certain real property located in Greenville, S.C. ("Greenville Property");

•     to disregard the Alexander Family Trust's nominal ownership of the Greenville Property because the Trust is the Defendant's nominee; and

•     to foreclose the federal tax liens encumbering the Defendant's property interest.

This Court has reviewed all the filings relevant to this case, including, out of an abundance of caution, an untimely affidavit filed by the Defendant on April 12, 2010. Based on this thorough review, the Court finds that the Parties have had ample opportunity to offer relevant evidence and a hearing is unnecessary. *See Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir.1994) ("There is no absolute requirement that a ruling on a motion for summary judgment be preceded by a hearing.").

I.     Standard of Review

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). For summary judgment purposes, a genuine issue of material fact is raised only if a reasonable jury could return a verdict for the nonmovants on each element necessary to their case. *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.,* 132 F.3d 1017, 1027 (4th Cir. 1997).

The Court must view the facts and inferences to be drawn from the evidence of record "in the light most favorable to the non-moving party." *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Conclusory allegations or denials, without more, are insufficient to preclude the granting of summary judgment. *See id*.

II.      Defendant's Income Tax Assessments

a.      Factual Background

The Defendant did not file federal income tax returns from at least 1990 through 1995. In November 1998, the IRS assessed the Defendant $29,026.00 for federal income taxes from 1990 through 1995, and $28,638.89 for penalties and interest over the same time period. The Government gave timely notice of each assessment and made a demand for payment.

Because the Defendant could not provide evidence documenting his financial condition between 1990 and 1995, the Government based its income amounts on information obtained from the Bureau of Labor and Statistics. The Defendant claims

that he earned no income, and points to the undisputed fact that he filed for bankruptcy in 1991. He claims he was caring for his sick mother and can produce no records to verify his lack of income because no income existed.

>    b.    Legal Analysis

In a tax proceeding, the taxpayer bears the burden of overcoming the presumption of correctness afforded to the IRS's reconstruction of unreported and undocumented income. *McHan v. Comm'r*, 558 F.3d 326, 332 n.6 (4th Cir. 2009) (citing *Cebollero v. Comm'r*, 967 F.2d 986, 990 (4th Cir.1992)).

The Government, in support of its assessment, has produced Certificates of Assessment which reflect when and in what amount the IRS assessed taxes, interest, and penalties in addition to reflecting any collection activities or payments. Although the Government concedes the Defendant filed for bankruptcy, the filing of bankruptcy alone is not enough to overcome the Defendant's burden of proof that he did not have income or was not required to pay taxes. *See, e.g.*, *Devich v. United States*, 25 F.3d 1056 (10th Cir. 1994) (noting that the IRS assessed penalties and interest in two years where the taxpayers, who were undergoing bankruptcy, did not file tax returns).

Other than his 1991 bankruptcy filing, the Defendant can produce no records to verify he was not earning income. He claims that his proof of zero income is the bankruptcy and his sworn testimony via deposition. The Defendant cites no legal authority and has not provided his bankruptcy records. Even if he did, the 1991

bankruptcy would still not show how the Defendant had no income between 1990 and 1995. *See McHan*, 558 F.3d at 333 (holding that taxpayer failed to overcome his burden of proof when he provided no records and merely referred to criminal judgment forfeiture). The Defendant completely fails to overcome the presumption of correctness of the Government's income tax assessments.

III. Defendant's Civil Penalty Conduct and Assessments

a. Factual Background

The Government claims the Defendant founded two groups, the Aware Group and the Freedom Trust Group, and violated 26 U.S.C. § 6700 by using these groups to instruct others on how to avoid various types of tax liability.

Specifically, through the Freedom Trust Group, the Defendant sold information about creating "pure trusts" that "in our research . . . [are] un-penetrable by judges, the IRS and other creditors." (Gov't's Mot. Summ. J., Ex. 5, Dkt. No. 22.) The information further instructed users that they could avoid certain liabilities by creating a trust, and having that trust place a lien on one's property. The resulting transfer of money into that trust would be unreachable because it would be "in attempt to clear a lien." (*Id*.) The information also included templates and step-by-step instructions to create these trusts.

Through the Aware Group, the Defendant sold a CD entitled Freedom Files. Among these files was a document called the Redemption Manual. The Redemption Manual explained how to take control of one's so-called Treasury Direct Account,

in Washington, D.C.. (*Id.*, Ex. 13.) The materials claimed that by taking control of your "straw man," you could essentially avoid tax liability.[1] The Government claims that the materials provided by the Aware Group were marketed as reliable tax information.

The Defendant's former wife also provided a CD containing various customer and membership information regarding the Defendant's two businesses. Based on this information, the IRS determined that between 2000 and 2004, the Defendant, through his companies, had conducted more than 1,100 transactions. The IRS assessed civil penalties under 26 U.S.C. § 6700 in the total amount of $1,152,000.

On November 16, 2006, Judge Henry Floyd determined that the schemes proposed by the Defendant violated various provisions of the Internal Revenue Code, and he enjoined the Defendant from continuing to promote these schemes. *See United States v. John Howard Alexander*, No. 6:06-cv-01862-HFF, slip op. at 1-6 (D.S.C. Nov. 17, 2006).

The Defendant claims he was merely in the business of exchanging information, and that when the Government requested he stop, he did so.

---

[1] Although the pleadings do not clearly explain the "straw man" concept, the straw man argument has long been used by tax protesters. Essentially, the argument is that at birth, citizens exist on paper at the U.S. Treasury. Through various maneuvering, one can take control of their paper existence, file a financing statement, and become the first party paid when liabilities become due. The argument hinges on the notion that your debts are really debts against the "paper" version of you, or your straw man. By taking control of the straw man one can circumvent their debts.

b.    Legal Analysis

Based on the record in this case, there is no genuine issue of material fact that the Defendant violated 26 U.S.C. § 6700, and that the assessment amount is appropriate.

i.    Defendant's Violation of § 6700

To establish liability under 26 U.S.C. § 6700, the Government must prove that the Defendant: 1) organized or sold, or participated in the organization or sale of, a plan or arrangement; 2) made or furnished false or fraudulent statements concerning the tax benefits to be derived from the plan or arrangement; 3) knew or had reason to know that the statements were false or fraudulent, and 4) the false or fraudulent statements pertained to a material matter. 26 U.S.C. §§ 6700(a), 6703(a); *see also United States v. Benson*, 561 F.3d 718, 721-22 (7th Cir. 2009).

1.    Participating in a Plan or Arrangement

The Defendant's ownership and operation of the Aware Group and the Freedom Trust Group constituted a plan under 26 U.S.C. § 6700(a)(1)(A)(iii). Part of the Defendant's scheme was to sell memberships to the Aware Group. One of the touted benefits of joining the Aware Group was that each participant received a CD of materials from it called the Freedom Files, a compendium of tax protester materials, including tax-related instructional manuals designed to help its members and customers evade taxes and the IRS (customers who were not members could also purchase other materials separately). Additionally, through the Freedom Trust

Group, the Defendant also sold "trust packages," which again were templates and instructional guides on how to use so-called "pure trusts" to conceal assets and income from the IRS. Thus, each is a "plan or arrangement" within the meaning of 26 U.S.C. § 6700(a)(1)(A)(iii). *See United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000) (holding that § 6700 encompasses "any 'plan or arrangement' having some connection to taxes").

The Defendant claims, without citing to any authority, that he did not participate in a plan because the Aware Group and Freedom Trust Group were "primarily designed to exchange information." (Def.'s Resp. at 6, Dkt. No. 28.) However, § 6700 encompasses those who directly or indirectly participate in the organization, promotion, and sale of tax-fraud schemes. *See* § 6700 (a)(1)(B). Regardless of whether he created the statements or merely re-circulated others' work, the Defendant cannot dispute that he furnished materials to his customers through the Aware Group and the Freedom Trust Group.

        2.     Furnishing False Statements that Defendant Knew Were False, which also Pertained to a Material Tax Matter

The statements contained within the Defendant's materials were false and related to a material tax matter. This finding is bolstered by Judge Floyd's holding that the Defendant's schemes violated various provisions of the Internal Revenue Code. *See United States v. John Howard Alexander*, No. 6:06-cv-01862-HFF, slip op. at 1-6 (D.S.C. Nov. 17, 2006). Additionally, the Defendant's materials made

several claims that were false and that the Defendant should have known were false. First, the claim that "[t]axation of income attributed to a trust, which is a form of contract, violates the constitutional prohibition against impairment of contracts" has been identified by the IRS as a "frivolous position" that can result in a penalty of $5,000 when asserted in a tax return or included in certain collection-related submissions. *See* I.R.S. Notice 2007-30. *(See also* Gov't's Mot. Summ. J., Ex. 5.)

Second, because the trusts advertised by the Defendant lack any real economic existence except to frustrate collection efforts, they are considered a sham for federal income tax purposes. *See, e.g.*, *Schulz v. Comm'r*, 686 F.2d 490, 495 (7th Cir. 1982); *Vnuk v. Comm'r*, 621 F.2d 1318, 1320-21 (8th Cir. 1980). Additionally, the theory of redemption via one's straw man, as advocated in the Defendant's materials, is frivolous on its face and has long been rejected by the courts. *See, e.g.*, *United States v. Kahn*, No. 5:03CV-436-OC-10GRJ, 2004 WL 1089116, at *1 (M.D. Fla. Mar. 30, 2004).

To the extent the Defendant argues he did not know the information was false, he should have known these statements were false. Like the defendant in *Schulz*, 529 F. Supp. 2d at 350, the Defendant here relied on and distributed tax-related opinions that have long been rejected by courts across the country. Additionally, any reasonable person in the Defendant's subjective position would have discovered the falsity of the statements. *See United States v. Raymond*, 228 F.3d 804, 812 (7th Cir. 2000) ("We attribute to both appellants a basic knowledge

of the law such that they should reasonably be aware that their personal belief that paying taxes is a voluntary activity does not represent the current state of the law.").

Lastly, the Defendant's statements related to a material matter because by promising the ability to avoid liability, the information had a substantial impact on the decision to purchase a tax package. *See United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990) ("Material matters are those which would have a substantial impact on the decision-making process of a reasonably prudent investor and include matters relevant to the availability of a tax benefit.")

The Defendant argues that he never marketed his materials as a way to avoid taxes, he never promised that people could avoid taxes, and he never represented that the information was true or accurate. However, regardless of how he marketed his materials, the issue is that the Defendant sold materials he should have known contained false or fraudulent statements. *United States v. Benson*, 561 F.3d 718, 722 (7th Cir. 2009). As to the Defendant's disclaimer that his customers should conduct their own research, courts have long rejected such disclaimers when the materials claim to be based on legal content and directly cite legal authority. *See, e.g.*, *United States v. Schulz*, 529 F. Supp. 2d 341, 351 (N.D.N.Y. 2007).

ii.     Assessment Amount

Section 6700(a) imposes a civil penalty "with respect to each activity . . . a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100

percent of the gross income derived (or to be derived) by such person from such activity." Accordingly, when the Government establishes that a defendant sold a certain number of materials, the burden shifts to the defendant to show that the income derived was less that $1,000 per transaction.

The Defendant's ex-wife, Ms. Ferguson, provided a CD from which the Government was able to determine at least 1,152 transactions occurred. Because the Government claims each transaction constituted a breach of § 6700, it assessed a total penalty of $1,152,000 against the Defendant. The Government claims the Defendant has been unable and unwilling to offer evidence of the gross income derived from his activities.

The Defendant notes that his ex-wife indicated during her deposition testimony that she burned all other records of the Defendant's business transactions. (Dep. of Heather Ferguson, July 27, 2009, at 56 ¶ 11-16, Dkt. No. 22-3.) Additionally, Ms. Ferguson testified that customers paid a one-time fee of either $240 or $295. (*Id*. at 20 ¶ 20-23.) The Defendant claims that even assuming the higher fee for all transactions, the total amount of money taken in would be $339,840, far less than the Government's $1,152,000 assessment. The Defendant argues "[i]n determining the amount of the penalty to be so assessed the government relied on information provided to it by Ms. Ferguson to determine the number of 'activities'. In the same breath, the government is rejecting her deposition

testimony regarding the gross income derived from such 'activities.'" (Def.'s Resp. at 9, Dkt. No. 28.)

There are several problems with the Defendant's logic. First, the Government determined the total number of transactions based on business records provided by Ms. Ferguson. It did not rely, as the Defendant asks this Court to do, solely on her uncorroborated testimony.[2] Second, Ms. Ferguson' testimony about the $295 fees related only to one type of item sold in the Defendant's business. (Dep. of Heather Ferguson at 20-21.) Accordingly, the Defendant's claims do not take into account any sales of the Freedom Trust Group's asset protection software and conflicts with the Defendant's own marketing materials that claim the Aware Group charged up to $995 for their product.

Given the record in this case, there is simply no genuine issue of material fact contradicting the Government's determination of the number of transactions. Further, the Defendant presents virtually no evidence to give rise to an issue of material fact that he derived less than $1,000 per transaction.

IV.     Foreclosure of Federal Tax Liens Encumbering Defendant's Property

        a.      Factual Background

In 1994, the Defendant's mother made the initial down payment on the Greenville Property, assumed an already-existing mortgage, and had the property

---

[2]     It is worth mentioning that a number of records in this case were, suspiciously, burned before they could ever be turned over to the Government.

titled in her name. The Defendant lived on the property, paid property taxes, and made improvements. In about 2002, the property was transferred to the Alexander Family Trust. In 2003, the Defendant's mother conveyed the Greenville Property to the Defendant as Trustee of the Alexander Family Trust. This Trust was created using a template from the Freedom Trust Group materials.

In order to secure improvements on the property, the Defendant's mother, also in 2003, executed a mortgage in favor of the Defendant personally. The Alexander Family Trust was not a party to the mortgage. The Defendant filed a satisfaction of the mortgage in 2006, just a few months before the Defendant's mother died. Between 2004 and 2007, the IRS filed numerous notices of federal tax liens on the Greenville Property relating to the Defendant's income tax liabilities and civil penalty liabilities. Additionally, the IRS filed a federal tax lien against the Defendant, as Trustee of the Alexander Family Trust.

The Defendant contends that the Alexander Family Trust was established for the benefit of the Defendant's only child.

b.    Legal Analysis

Under 26 U.S.C. § 6321, a lien on the taxpayer's property and rights to the property arise in the United States' favor when the taxpayer is liable for federal taxes and refuses to pay that obligation after demand is made. Section 6321 includes not only any property owned by the delinquent taxpayer, but also any property held by a third party if the Court determines that the third party is holding

the property as a nominee or alter ego of the delinquent taxpayer. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977).

To make the determination of whether the Alexander Family Trust was merely a nominee of the Defendant, the Court must first look to South Carolina law to determine if the Defendant has rights to the Greenville Property; if he possesses such rights, then federal law dictates whether it qualifies as property for purposes of a federal tax lien under § 6321. *Drye v. United States*, 528 U.S. 49, 58 (1999).

i.      Defendant's Rights Under South Carolina Law

The Defendant has rights in the Greenville Property under South Carolina law by way of a resulting trust.[3] A resulting trust arises when the intent behind the disposition or other facts and circumstances create an inference that the beneficial interest does not run with the legal title. *Bowen v. Bowen*, 352 S.C. 494, 499, 575 S.E.2d 553, 556 (2003). When real estate is conveyed to one person and the

---

[3]      Were a resulting trust not present here, this Court finds that the Defendant would nonetheless have rights in the property under South Carolina's constructive trust doctrine. A constructive trust "arises whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title." *Lollis v Lollis*, 291 S.C. 525, 528-29, 354 S.E.2d 559, 561 (1987). Constructive trusts arise from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Id*. Here, the Defendant created the Alexander Family Trust specifically to frustrate efforts of creditors to attach the property. The Trust is nothing more than a legal fiction to shield the property. It is plain from the record that the Defendant set himself up as the sole trustee of the property with the intention of retaining beneficial interest while keeping the property out of the supposed reach of creditors, including the IRS.

consideration paid by another, a presumption arises that the persons who pay the purchase money intended a benefit to himself or herself. *Id*.

Although the Defendant and his mother purported to transfer legal title to the Alexander Family Trust in either 2001 or 2002, the beneficial interest in the property never changed. Accordingly, a resulting trust exists in both the Defendant and his mother. The Defendant continued to live on the property, make improvements on the property, and operate his business from the property. Further, both the Defendant and his mother paid consideration for the property because the mother made the initial down payment, and both she and the Defendant made payments on the mortgage.

The Defendant and his mother also continued to act as the true owners of the property. On the very same day the title was purportedly transferred to the Alexander Family Trust, the Defendant's mother executed a mortgage in favor of the Defendant personally. If the mother had in fact transferred the property to the Trust, as the Defendant claims, then she had no interest in the property to mortgage later. Further, after the mother's death, the Defendant, and not the Alexander Family Trust, continued to pay property taxes on the Greenville Property.

The Defendant claims that no resulting trust existed, and that the Alexander Family Trust validly had rights to the property under South Carolina law, because the Trust was created for the benefit of the Defendant's only child. The Defendant argues that under South Carolina law, a trust need only seek a valid, legal purpose.

*See* S.C. Code Ann. § 62-7-404. The Defendant claims he has maintained the property for his only heir, and the only evidence to the contrary is the Government's speculation. This argument is unavailing. The Defendant paid the taxes, helped pay off the mortgages, and still retains beneficial use. Accordingly, under South Carolina law, the burden shifts to the Defendant to show that the property is being held in trust for his daughter. *See Bowen,* 352 S.C. at 499, 575 S.E.2d at 556. The Defendant's mere statement that his twenty-one-year-old adopted daughter, with whom he has not had contact in three years, retained beneficial interest fails to create a factual issue precluding summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). (*See also* Dep. of Heather Ferguson at 11, ¶¶ 12-21.) Thus, a resulting trust existed in favor of the Defendant, giving him rights in the property under South Carolina law.

ii.     Property's Qualification for Federal Tax Lien

The IRS filed a nominee lien in Greenville County against the Defendant, as trustee of the Alexander Family Trust, on May 20, 2008. Federal law dictates whether property is subject to a federal tax lien under § 6321. *Drye v. United States*, 528 U.S. 49, 58 (1999). The Fourth Circuit does not appear to have adopted a test in determining whether to enforce a nominee lien. Some circuits merely determine "the true beneficial owner[] . . . ." *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000) However, at least two circuits have adopted a more comprehensive six-factor analysis:

(1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Holman v. United States*, 505 F.3d 1060, 1065 n.1 (10th Cir. 2007) (quoting

*Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)).

As discussed previously, there is no doubt that the Defendant was the true beneficial owner of the Greenville Property. However, even under the more comprehensive six-factor test, the vast majority of the factors weigh in favor of enforcing the Government's nominee lien. Specifically, the Trust paid minimal consideration, a close relationship existed between the transferor (the Defendant's mother) and the transferee (the Defendant as trustee), no actual change in possession occurred, and the Defendant continued to enjoy the benefits of the transferred property. There is little doubt, and certainly no genuine issue of material fact, that the Alexander Family Trust was a nominee of the Defendant, and that the Greenville Property is subject to a federal tax lien.

C.      Defendant's Declaratory Judgment Claim

The Defendant seeks a declaratory judgment that "there is no legal basis for the Secretary of the Treasury to assess any tax assessments against [Alexander] for unpaid federal income taxes nor is there any basis for the [Government] to seek any penalties against him." (Def.'s Answer at 3-4 ¶16, Dkt. No. 8.) For the reasons

discussed above, the Government's assessments at issue here are valid and have a legal basis.

If the Defendant is seeking declaratory judgment for other penalty conduct or taxes not at issue in this lawsuit, then the Declaratory Judgment Act, 28 U.S.C. § 2201, bars the Court from granting relief because it excepts most federal tax disputes. *See also In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583-84 (4th Cir. 1996). Thus, insofar as the Defendant is claiming that the United States does not have a legal basis to ever again assess any taxes or penalties against him, the tax exception to the Declaratory Judgment Act applies and the Defendant's request for declaratory judgment is denied.

### Conclusion

After a careful review of the record in this case, this Court determines that there is no genuine issue of material fact regarding the income tax assessments levied against the Defendant, the civil penalty assessments levied against the Defendant, the Defendant's interest in the Greenville Property, and the enforceability of the federal tax lien on the Greenville Property. Accordingly, the Government is entitled to summary judgment and to a decree of foreclosure against the Defendant's property in order to collect its tax lien against him.

IT IS THEREFORE ORDERED THAT the Government's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED THAT:

1.   Judgment is entered in favor of the Government against Defendant John Howard Alexander for federal income taxes, interest and statutory additions (including statutory interest accruing but not assessed as of April 12, 2010) for 1990-1995 in the amount of $128,549.45, plus interest and all other statutory additions accruing after April 12, 2010;

2.   Judgment is entered in favor of the Government against Defendant John Howard Alexander for penalties imposed under 26 U.S.C. § 6700 (including statutory interest accruing but not assessed as of April 12, 2010) in the amount of $1,336,021.90, plus interest and all other statutory additions accruing after April 12, 2010;

3.   The Government's tax liens, notices of which were filed in Greenville County, South Carolina on February 17, 2005, October 1, 2007, October 22, 2007, and May 20, 2008, are valid and subsisting liens against John Howard Alexander's property and interests in property;

4.   The federal tax liens under 26 U.S.C. § 6321 pertaining to these liabilities attach to all property and rights to property of Defendant John Howard Alexander, including real property in Greenville County, South Carolina held by Defendant John Howard Alexander's nominee, the Alexander Family Trust, and more particularly described as:

> ALL that certain piece, parcel, or lot of land, situate, lying and being in the State of South Carolina, County of Greenville, being known and designated as Lot No. 1 and a part of Lot No. 2 on a plat of Farmington Acres recorded in the Office of the Register of Deeds for Greenville County, South Carolina, in Plat Book GGG at Page 183 and on a more recent survey prepared by Freeland & Associates dated October 25, 1979 and recorded in Plat Book 7-K at Page 92, reference to said plat is hereby craved for a complete metes and bounds description.

> THIS BEING the same property conveyed unto Miriam Getz by deed of Jackie Lee Hammack dated November 3, 1995 and recorded November 4, 1994 in the Register of Deeds Office for Greenville County South Carolina in Book 1588 at Page 816;

5.    The federal tax liens are hereby foreclosed against the real property described in Paragraph 4 of this judgment; and

6.    The real property described in Paragraph 4 of this judgment will be sold by further order of the Court, and the proceeds of the sale will be distributed to such parties and in such amounts as this Court shall determine.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

April 21 , 2010
Anderson, South Carolina